Opinion
 

 VOGEL (Miriam A.), J.
 

 Background
 

 Several lawsuits alleging construction defects were filed against Glenfed Development Corp., a real estate developer. After exhausting its primary insurance coverage in the settlement of some of these actions, Glenfed tendered the remaining claims to its excess carriers, including National Union Fire Insurance Company (which had insured Glenfed from August 1988 to August 1989). After National Union denied coverage, Glenfed sued it (and others) for declaratory relief and reformation, and for damages for breach of contract and breach of the implied covenant of good faith and fair dealing. National Union answered and discovery ensued. Glenfed served on National Union a request for production of documents in which it sought, among other things, National Union’s claims manual. National Union refused to produce the claims manual and Glenfed moved to compel production. Following a hearing before a discovery referee and further proceedings before the trial court, the motion was denied, the trial court finding that, as to the claims manual, Glenfed had failed to show “good cause” for its production.
 

 
 *1116
 
 Glenfed then filed a petition for a writ of mandate, asking us to direct the trial court to compel production. We issued an order to show cause, received opposition, and heard argument. We now issue the writ.
 
 [1]
 

 Discussion
 

 I.
 

 National Union denied coverage on the ground that the policy does not cover third party claims for defective construction caused by subcontractors. Glenfed does not contend that the policy, as issued, expressly includes such coverage, but does contend that it paid for and expected to receive coverage for claims arising out of the work of its subcontractors and other design professionals. According to Glenfed, standard comprehensive general liability policies issued between 1973 and 1985 did not cover a contractor or developer for its subcontractors’ defective work, but developers and contractors could at that time purchase a “broad form property damage” endorsement to provide such coverage. Beginning in 1986 (according to Glenfed), standard CGL policies did include this kind of broad form coverage. (See
 
 Maryland Casualty Co.
 
 v.
 
 Reeder, supra,
 
 221 Cal.App.3d at pp. 971-972; Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1996) 7:1442 to 1453, pp. 7E-10 to 7E-13.) Based upon the premium charged by National Union and paid by Glenfed for its 1988-1989 excess policy ($400,000), Glenfed says it thought it was buying broad form coverage, a belief it contends was and is reasonable because (as National Union knew) broad form coverage was and is “essential for a real estate developer” and, “[w]ithout it, . . . excess liability policies are of virtually no value.” Instead, Glenfed got a policy with the standard 1973 exclusion.
 

 
 *1117
 
 II.
 

 Based upon the foregoing analysis, Glenfed contends the claims manual is discoverable. We agree. A “party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action ... if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence.” (Code Civ. Proc., § 2017, subd. (a).)
 
 [2]
 
 In the context of discovery, evidence is “relevant” if it might reasonably assist a party in evaluating its case, preparing for trial, or facilitating a settlement. Admissibility is
 
 not
 
 the test, and it is sufficient if the information sought might reasonably lead to other, admissible evidence.
 
 (Lipton
 
 v.
 
 Superior Court
 
 (1996) 48 Cal.App.4th 1599,1611-1612 [56 Cal.Rptr.2d 341].) In the more specific context of a request to produce documents, a party who seeks to compel production must show “good cause” for the request (§ 2031, subd. (l))—but where, as here, there is no privilege issue or claim of attorney work product, that burden is met simply by a fact-specific showing of relevance.
 
 [3]
 
 (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial 2 (The Rutter Group 1996) <H 8:1495.6 to 8:1495.10, pp. 8H-21 to 8H-22.) That showing was made here. (Pt. I,
 
 ante.)
 

 III.
 

 To avoid the conclusion compelled by application of the foregoing rules, National Union contends its claims manual would not be admissible at trial and that it is not likely to lead to admissible evidence. We disagree.
 

 Although the parties have not cited any California case specifically holding that an insurer’s claims manual is discoverable (and we have found none), our courts have for years recognized that claims manuals are
 
 admissible
 
 in coverage dispute litigation. (See, e.g.,
 
 Neal
 
 v.
 
 Farmers Ins. Exchange
 
 (1978) 21 Cal.3d 910, 923, fn. 8 [148 Cal.Rptr. 389, 582 P.2d 980];
 
 Downey Savings & Loan Assn.
 
 v.
 
 Ohio Casualty Ins. Co.
 
 (1987) 189 Cal.App.3d 1072, 1082, 1099 [234 Cal.Rptr. 835];
 
 Moore
 
 v.
 
 American United Life Ins. Co.
 
 (1984) 150 Cal.App.3d 610, 620, fn. 3 [197 Cal.Rptr. 878].) If claims manuals are admissible, it follows (as the courts of other states with similar discovery statutes have held) that they are
 
 discoverable.
 
 (See
 
 Blockbuster
 
 
 *1118
 

 Entertainment
 
 v.
 
 McComb Video
 
 (M.D.La. 1992) 145 F.R.D. 402, 404-405;
 
 Champion Intern. Corp.
 
 v.
 
 Liberty Mut. Ins. Co.
 
 (S.D.N.Y. 1989) 129 F.R.D. 63, 67;
 
 APL Corp.
 
 v.
 
 Aetna Cas. & Sur. Co.
 
 (D.Md. 1980) 91 F.R.D. 10, 14-15;
 
 Hoechst Celanese
 
 v.
 
 National Union
 
 (Del.Super.Ct. 1991) 623 A.2d 1099,1107.) National Union nevertheless contends its current claims manual is irrelevant here because it was not distributed until 1995 (long after Glenfed’s policy was issued), because Glenfed’s suit does not allege poor claims handling procedures,
 
 [4]
 
 because its claims manual does not refer to any policy terms, and because extrinsic evidence concerning the policy’s interpretation will be inadmissible at trial. It follows, according to National Union, that the claims manual is not discoverable. National Union is wrong.
 

 First, we simply cannot accept National Union’s blanket assertion that there is nothing in the claims manual about policy terms. By statute (Ins. Code, § 790.03, subd. (h)(3)), insurers are required to maintain guidelines for the prompt processing of claims. By practice, these guidelines are maintained in claims manuals that “generally provide the criteria for processing claims and the procedure for reporting claims to regional or home office claims supervisors.” (Croskey et al., Cal. Practice Guide: Insurance Litigation 3,
 
 supra,
 
 ¶ 15:455, p. 15-98.) Since virtually all insurance policies spell out the manner in which claims must be presented to the insurer, it makes no sense to suggest that the book designed to serve as the instruction manual for the carrier’s employees would be completely silent about policy terms. If nothing else, the claims manual may show how National Union understood and intended to apply the standard language used in its CGL policies, or it may disclose the identity of persons involved in the claims handling process.
 

 Second, the fact that the claims manual now in use was not distributed until 1995 is immaterial. Since it appears that the relevant policy language is still in use, the current claims manual may disclose how that language was and still is interpreted and applied by National Union. If there have been changes, that fact can be explained. If nothing else, the manual may lead to the discovery of other, more relevant evidence regarding the language previously used in Glenfed’s policy and the reason for any changes.
 

 Third, National Union’s argument about admissibility ignores the fact that, in this type of litigation, extrinsic evidence concerning the reasonable
 
 *1119
 
 expectations of the insured may be admissible at trial.
 
 (AIU Ins. Co.
 
 v.
 
 Superior Court
 
 (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253] [parties’ intent is to be derived “if possible” solely from the written provisions];
 
 Farmers Ins. Exchange
 
 v.
 
 Knopp
 
 (1996) 50 Cal.App.4th 1415, 1422-1423 [58 Cal.Rptr.2d 331].) Moreover, even if it is inadmissible at trial, the claims manual may lead to the discovery of other, relevant evidence that is admissible, and no more is required to justify the demand for its production. (Cf.
 
 Colonial Life & Accident Ins. Co.
 
 v.
 
 Superior Court
 
 (1982) 31 Cal.3d 785, 790 [183 Cal.Rptr. 810, 647 P.2d 86].) As a result, National Union’s lengthy discussion of “admissibility” simply begs the question.
 
 [5]
 

 IV.
 

 California’s pretrial discovery procedures are designed to minimize the opportunities for fabrication and forgetfulness, and to eliminate the need for guesswork about the other side’s evidence, with all doubts about discoverability resolved in favor of disclosure.
 
 (Greyhound Corp.
 
 v.
 
 Superior Court
 
 (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266];
 
 Colonial Life & Accident Ins. Co.
 
 v.
 
 Superior Court, supra,
 
 31 Cal.3d at p. 790.) It follows that, on the facts of this case (where the trade secret issue was waived and where there is no other claim of privilege), National Union’s claims manual is discoverable.
 
 (Gonzalez
 
 v.
 
 Superior Court
 
 (1995) 33 Cal.App.4th 1539, 1546 [39 Cal.Rptr.2d 896] [any party may obtain discovery of any matter, not privileged, that is relevant to the subject matter involved in the lawsuit if the matter is either itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence].)
 
 [6]
 

 
 *1120
 
 Disposition
 

 Let a peremptory writ of mandate issue commanding the trial court to vacate its order of November 26, 1996, to the extent it denies Glenfed’s motion to compel production of National Union’s claims manual, and to enter a new order granting the motion in this regard. The provisions of the parties’ resolution of this issue may be incorporated into the new order. The parties are to pay their own costs of these writ proceedings.
 

 Ortega, Acting P. J., and Masterson, J., concurred.
 

 [1]
 

 Glenfed also sought drafting history documents and documents related to the manner in which Glenfed’s premium was calculated. Our order to show cause was limited to the claims manual. We note, however, that the drafting history documents are analytically indistinguishable from the claims manual and are clearly discoverable
 
 (Montrose Chemical Corp.
 
 v.
 
 Admiral Ins. Co.
 
 (1995) 10 Cal.4th 645, 670 [42 Cal.Rptr.2d 324, 913 P.2d 878]) and that as far as the premium information is concerned, National Union now admits that it is relevant and tells us it has produced whatever it has on this subject. The concession is clearly warranted. (See
 
 Cooper Companies
 
 v.
 
 Transcontinental Ins. Co.
 
 (1995) 31 Cal.App.4th 1094, 1108 [37 Cal.Rptr.2d 508];
 
 Maryland Casualty Co.
 
 v.
 
 Reeder
 
 (1990) 221 Cal.App.3d 961, 968 [270 Cal.Rptr. 719].)
 

 Three court days before oral argument (which had been scheduled
 
 eight
 
 weeks in advance), the parties advised us that they had resolved their discovery disputes and asked us to discharge our OSC. We denied the request as untimely. When our intervention is sought by a petition for extraordinary relief and we advise the parties that we will, as requested, resolve an issue of first impression at an interlocutory stage of the proceedings, a negotiated resolution of the issue on the eve of oral argument does not mean we will refrain from filing our opinion.
 
 (State of Cal.
 
 ex rel.
 
 State Lands Com.
 
 v.
 
 Superior Court
 
 (1995) 11 Cal.4th 50, 60-62 [44 Cal.Rptr.2d 399, 900 P.2d 648].)
 

 [2]
 

 Unless otherwise stated, all section references are to the Code of Civil Procedure.
 

 [3]
 

 In opposition to Glenfed’s petition, National Union says the trial court’s order was correct because the claims manual constitutes a trade secret. The issue is not before us. The trial court found (and we agree) that the issue was waived, and National Union does not seriously contest that finding. We therefore do not consider whether an insurance company’s claims manual might be protected from disclosure on this ground, or whether a protective order is necessary or appropriate in this case or any other case.
 

 [4]
 

 National Union tells us that Glenfed’s bad faith, breach of contract and declaratory relief causes of action are “not based on National Union’s poor claims handling procedures, but on National Union’s legal position on the interpretation of its policy.” The notion that National Union’s “legal position on the interpretation of its policy” does not affect its claims handling procedures is silly.
 

 [5]
 

 We summarily reject National Union’s alternative contention that, assuming the claims manual
 
 was
 
 relevant, it is not now because of a partial settlement entered by the parties after the discovery order before us was made. The order under review was entered in November 1996. In December, as the result of a partial settlement, Glenfed released National Union from liability for all claims through the date of that agreement and Glenfed dismissed all of its claims against National Union
 
 except
 
 for its reformation cause of action. The reformation cause of action alleges that if the National Union policy does not provide broad form property coverage, the policy should be reformed to provide such coverage because its omission was the result of mistake or fraud. Thus, the claims manual remains relevant because there is still a question about whether the broad form coverage was omitted by mistake or as the result of fraud.
 

 [6]
 

 Glenfed claims that, in addition to granting its motion to compel, the trial court should have awarded sanctions. Since there was no case directly on point, we think not. (§ 2031, subd. (l) [sanctions must be awarded only if a motion to compel was opposed without substantial justification, and they may be denied where the imposition of sanctions would be unjust].)