[No. B152121. Second Dist., Div. One. Jan. 9, 2002.]

KYLE R. KIRKLAND et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GUESS?, INC., Real Party in Interest.

**COUNSEL**

Tressler, Soderstrom, Maloney & Priess, Jeffrey J. Christovich, Katherine P. Shannon and Craig S. Berman for Petitioners.

No appearance for Respondent.

O'Melveny & Myers, Daniel M. Petrocelli, Robert C. Welsh and Jeffrey A. Barker for Real Party in Interest.

**OPINION**

**VOGEL (MIRIAM A.), J.**—The Securities and Exchange Commission conducted an investigation into certain transactions involving Kyle R. Kirkland, one of the defendants in this action brought by Guess?, Inc. to recover damages for fraud and other civil wrongs. During discovery, Guess asked Kirkland to produce copies of documents and transcripts of testimony given

in the SEC proceedings. Kirkland admitted that he had copies of the transcripts and documents but refused to produce them, claiming the SEC proceedings are "private" and "confidential," and that the items requested by Guess are not discoverable. The trial court disagreed and ordered Kirkland to produce the documents and transcripts. At Kirkland's request, we stayed the trial court's order, issued an order to show cause, and considered Kirkland's claims about privacy and confidentiality. We conclude that transcripts of testimony given before the SEC in the course of an investigation are discoverable in civil litigation where, as here, the party from whom discovery is sought has possession of or ready access to the documents and transcripts.

## BACKGROUND

Between 1992 and 1994, Guess and Pour le bebe, Inc. (PLB) entered several license agreements that gave PLB the right to sell baby clothes using Guess's trademarks, and that obligated PLB to pay royalties to Guess. In 1998, PLB (then in arrears in its royalty payments) retained Kyle R. Kirkland, Kirkland Messina L.L.C., and C.K.M. Securities L.L.C. to "assist PLB in the financial turnaround of PLB, in obtaining financing, and in negotiating the sale of PLB."[1] Guess considered various proposals by PLB and Kirkland but no resolution was reached and in May 1999, Guess initiated arbitration proceedings against PLB to recover past due royalties. Around the same time, Guess sued Kirkland for damages on theories of intentional interference with contractual relations and prospective economic advantage, unfair competition, and various forms of fraud.[2] Kirkland answered and tried but ultimately failed in his efforts to compel arbitration of his dispute with Guess. (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553 [94 Cal.Rptr.2d 201].)

Discovery in the Guess/Kirkland lawsuit ensued, as did the arbitration in the Guess/PLB royalty dispute, as the result of which Guess became aware that Kirkland had used "several sham transactions" to conceal PLB's inability to make payments on its existing debt and to qualify for further loans to pay its suppliers and continue its operations. According to Guess, it discovered in early 2001 that (back in the spring of 1998) PLB had defaulted on its obligation to its principal lender (Fleet Financial Services), and was on the

---

[1]Unless the context suggests otherwise, our references to Kirkland include Kirkland Messina and C.K.M. Securities.

[2]According to Guess, its complaint against Kirkland "concerns the fraudulent and illegal actions" taken by Kyle Kirkland and his companies, "self-described 'turnaround experts,' in their efforts to induce Guess to forego collecting millions of dollars in unpaid royalties from [PLB], to delay terminating PLB's licenses, and to possibly purchase PLB, even though [Kirkland] knew that PLB was on the verge of collapse."

verge of defaulting on a multimillion dollar loan obligation to another lender (Western Asset Management, the manager of a "high yield fund" offered by the Legg Mason Income Trust, Inc., a registered investment company).[3] In its quest for funding, PLB approached the manager of the Legg Mason portfolio (Trudie Whitehead) with a "scheme" that included the creation of a "shell company" (Pacific Apparel LLC) and a loan to that company by Western, with the loan secured by debt securities issued by Pacific. With these loan proceeds in hand, Kirkland bought PLB's "bad loans" from Western. With the PLB obligation to Western satisfied at least on paper, Western made a new $3 million bridge loan to PLB, part of which was used by Kirkland to pay Guess's past due royalties "in order to induce Guess to enter into a royalty forbearance agreement."

Guess also learned that the transactions involving Kyle Kirkland, PLB, Western, and Pacific were the subject of a Securities and Exchange Commission investigation. Armed with that information, Guess served a request for production of documents on Kirkland and asked for all testimony, complaints, reports, and other documents regarding the SEC's investigation of PLB, Western, and Pacific. Kirkland's lawyers conceded that Kirkland had responsive documents and transcripts in his possession but refused to produce any of the materials, claiming the request was vague, ambiguous, overbroad, oppressive, burdensome, irrelevant, and not likely to lead to the discovery of admissible evidence—and that it called for the production of "confidential documents relating to a private SEC investigation."

Guess moved to compel production, contending the SEC materials were clearly relevant to its claims and asking the court to order Kirkland to produce all testimony and documents given to the SEC by several named individuals affiliated with Kirkland and the entities mentioned above. Kirkland opposed the motion, claiming the testimony and records submitted to the SEC are not discoverable. After the motion was briefed but before it was heard, Guess obtained transcripts of testimony given by Western's employees during the SEC investigation and realized that, before their testimony, the witnesses had been cautioned by the SEC that their testimony could be released to the public, and that the central transaction under investigation was a "California bond transaction" involving the potential purchase by Kirkland of a $2.5 million note arising out of the Western loan to PLB.

By stipulation, the discovery dispute was heard by a referee (Hon. David N. Eagleson, Ret.), and the additional information described in the preceding paragraph was presented to the referee at a hearing held in July 2001. At the

---

[3]Since the Guess/Kirkland lawsuit has yet to be tried, the background "facts" in this paragraph have not been established in this action.

conclusion of the hearing, the referee found that Guess had established good cause for the production of the SEC materials, that Guess's discovery requests are clear and not ambiguous, that Kirkland's claims of confidentiality and privacy are not supported by California law, and that the requested testimony and documents about the transactions related to (but not part of) the PLB/Western/Pacific deal are relevant to Guess's claims of fraud to show Kirkland's state of mind. The referee recommended to the trial court that it issue an order compelling Kirkland to produce all SEC testimony given by Kirkland's and Pacific's principals, officers, employees, and agents, and all documents produced by those witnesses during their testimony.

Kirkland objected to the referee's report and recommendations, and a hearing was held by the trial court, at the conclusion of which the court (with a minor and presently irrelevant exception) adopted the referee's findings and recommendations. At a further hearing held before the referee to clarify the order, Kirkland conceded the relevance of the SEC testimony related to the PLB/Pacific transactions and agreed to produce that testimony (and related documents). But Kirkland insisted that he is entitled to withhold personal financial material belonging to third parties, even though the information had been produced to the SEC in connection with Kirkland's testimony. To resolve that issue, the referee directed Kirkland to deliver a log of all materials claimed by Kirkland to constitute personal financial materials belonging to private third parties.

Before the "privacy log" was due, Kirkland filed a petition for a writ of mandate and asked us to intervene. In August 2001, we stayed the SEC discovery orders, issued an order to show cause, and set the matter for hearing. In October, Guess notified us that (in September) the SEC had issued an order instituting "public administrative and cease-and-desist" proceedings with regard to the Kirkland investigation. Guess suggested that Kirkland's petition, "unfounded from the outset," should have been withdrawn by Kirkland and that, since it hadn't been, we ought to summarily dispose of it. In response, Kirkland insisted that the factual predicate for his petition survived the SEC's order. Despite a further flurry of letters, we left the matter on calendar and now address the issue on its merits.[4]

---

[4]On September 28, 2001, the SEC issued three separate but related orders instituting *public* administrative and cease-and-desist orders, all of which also imposed sanctions. The order referred to in the text was made *In the Matter of Kyle R. Kirkland* and is based upon an "offer of settlement" by Kirkland that was accepted by the SEC. The six-page order describes Kirkland as the "principal of a former broker-dealer who engaged in acts that resulted in the overstatement of the net asset value . . . of a mutual fund and an offshore fund from 1996 to 1998." The order bars Kirkland from association with any broker or dealer with the right to

## DISCUSSION

■ Kirkland contends that documents and transcripts related "to a private and confidential SEC investigation" are not subject to discovery. This is so, we are told, because an investigation "may not necessarily reveal any irregularities, improprieties, illegalities or misconduct on the part of the subject of the investigation." It is for this reason, claims Kirkland, that "[i]nformation or documents obtained by the [SEC] in the course of any investigation or examination, unless made a matter of public record, shall be deemed non-public." (17 C.F.R. § 203.2 (2001).) Leaving to one side the fact that the proceedings before the SEC have progressed well beyond a mere investigation, there are several reasons why we disagree.

■ First, "California's pretrial discovery procedures are designed to minimize the opportunities for fabrication and forgetfulness, and to eliminate the need for guesswork about the other side's evidence, with all doubts about discoverability resolved in favor of disclosure." (*Glenfed Development Corp. v. Superior Court* (1997) 53 Cal.App.4th 1113, 1119 [62 Cal.Rptr.2d 195].)

■ Second, Guess's fraud claims support the trial court's findings that evidence about Kirkland's state of mind is relevant, and that the testimony and documents concerning Kirkland's involvement in the transactions with PLB, Western, and Pacific are (at a minimum) reasonably calculated to lead to the discovery of admissible evidence. (Code Civ. Proc., § 2017, subd. (a); *Glenfed Development Corp. v. Superior Court, supra,* 53 Cal.App.4th at p. 1117 [in the context of discovery, evidence is relevant if it might reasonably assist a party in evaluating its case, preparing for trial, or facilitating a

---

reapply for association after three years, and orders him to pay a $30,000 penalty. A separate order instituting *public* administrative proceedings and imposing sanctions was made *In the Matter of Western Asset Management Co. and Legg Mason Fund Adviser, Inc.,* also by consent. According to this order, the matter arose "from a portfolio manager who defrauded a mutual fund and an offshore fund from 1996 to 1998. The portfolio manager concealed from the funds and their investment advisers that issuers of securities held by the funds were suffering severe financial problems and inflated the value of the troubled securities, which caused one of the funds materially to overstate its net asset value. The funds' manager, [Legg Mason] Fund Adviser, and the sub-adviser, [Western], failed to reasonably supervise the portfolio manager. . . ." Western and Legg Mason were each ordered to pay a civil penalty of $50,000. The third order instituting *public* administrative and cease-and-desist proceedings was made *In the Matter of Trudie D. Whitehead,* also by consent. In that order, Whitehead is described as "a portfolio manager . . . who engaged in acts that resulted in the overstatement of the net asset value . . . of a mutual fund and an offshore fund from 1996 to 1998." Whitehead was ordered to pay a penalty of $25,000 and was barred from association with any investment adviser (and barred from serving or working for a registered investment company). The orders can be found at <http://www.sec.gov/litigation/admin/33-8019.htm> (as of Dec. 6, 2001), <www.sec.gov/litigation/admin/33-8018.htm> (as of Dec. 6, 2001), and <www.sec.gov/litigation/admin/ia-1980.htm> (as of Dec. 6, 2001).

settlement].) Testimony and documents presented to the SEC about transactions involving PLB, Western, and Pacific, and about similar transactions involving Kirkland, are all relevant to Guess's claim that Kirkland orchestrated those transactions in an effort to enhance PLB's financial appearance. (Evid. Code, § 1101, subd. (b); *Morris Stulsaft Foundation v. Superior Court* (1966) 245 Cal.App.2d 409, 422-423 [54 Cal.Rptr. 12] [evidence of other transactions is admissible to show motive, intent, knowledge, plan, and absence of mistake].) The SEC materials are discoverable for this reason, and we therefore disregard Kirkland's screed about the perils of overreaching discovery arising out of Guess's incidental unfair competition claims.

Third, ample good cause for the production of the SEC documents has been shown. (Code Civ. Proc., § 2031, subds. (l), (m); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) Discovery, ¶¶ 8:1495 to 8:1495.10, pp. 8H-24 to 8H-26 [absent a claim of privilege or attorney work product, the party who seeks to compel production has met his burden of showing good cause simply by a fact-specific showing of relevance].) Once good cause was shown, the burden shifted to Kirkland to justify his objection. (*Coy v. Superior Court* (1962) 58 Cal.2d 210, 220-221 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678].)

Fourth, Kirkland has not produced any evidence to support his claim that he or any witness actually believed the SEC investigation was private or confidential. Generously construed, the record shows only that Kirkland's lawyer "made a timely request that any information submitted to the Commission . . . be given 'confidential treatment' pursuant to 17 C.F.R. § 200.83." Assuming that such a request was made (we are not told when or to whom it was made or whether it was in writing or oral), it would mean only that Kirkland asked (and not that the SEC agreed) that the documents "be deemed non-public." (17 C.F.R. § 203.2 (2001); *In re Leslie Fay Companies, Inc. v. Securities Lit.* (S.D.N.Y. 1993) 152 F.R.D. 42, 45-46 [in the absence of a confidentiality agreement, the mere request that the SEC keep submissions confidential is insufficient to protect the submissions from disclosure to third parties].)[5]

Fifth, there is no law to support Kirkland's claim that the SEC testimony and documents should as a matter of policy be treated as private or confidential, and the law that does exist supports the opposite conclusion. Witnesses who testify or produce documents to the SEC usually have the right to obtain copies of the transcripts of their testimony and documents (17 C.F.R. § 203.6 (2001)), and where they have done so (as has Kirkland) there is no

---

[5]At its Web site (<http://www.sec.gov/privacy/htm> [as of Dec. 6, 2001]), the SEC makes it clear that it "will not agree to limit its use of your information in any way, unless the SEC or its staff explicitly agrees to do so in writing."

cognizable claim of confidentiality or privacy in those documents or transcripts. (*LaMorte v. Mansfield* (2d Cir. 1971) 438 F.2d 448, 451 [to the extent there is any privilege, it belongs to the SEC, not the witness]; *White v. Jaegerman* (S.D.N.Y. 1970) 51 F.R.D. 161, 163.) We consider it significant that the federal courts have uniformly rejected Kirkland's claim that, in the absence of judicial protection for the SEC's confidential investigatory process, witnesses will not be as forthcoming as they otherwise might be, and equally significant that the federal courts have refused to imbue such transcripts and documents with a patina of confidentiality that would trigger an exemption from normal discovery. (See *Zients v. LaMorte* (S.D.N.Y. 1970) 319 F.Supp. 956, 958, mandamus denied, *sub nom. LaMorte v. Mansfield, supra,* 438 F.2d 448 [the confidentiality provisions that do exist are to permit the SEC to enjoy confidentiality where it is necessary to complete its investigation]; *In re Air Passenger Comp. Res. Sys. Antitrust Lit.* (C.D.Cal. 1986) 116 F.R.D. 390, 393; *In re Woolworth Corp. Securities Class Action Lit.* (S.D.N.Y. 1996) 166 F.R.D. 311, 312-313; *Herbst v. Able* (S.D.N.Y. 1972) 63 F.R.D. 135, 138; *In re Steinhardt Partners, L.P.* (2d Cir. 1993) 9 F.3d 230; *Westinghouse v. Republic of the Philippines* (3d Cir. 1991) 951 F.2d 1414.)

Sixth, the trial court's order is not unduly burdensome. (*Mallinckrodt Chemical Works v. Goldman, Sachs & Co.* (S.D.N.Y. 1973) 58 F.R.D. 348, 352-354 [it is not unduly burdensome to require witnesses or targets of SEC investigations to obtain and produce copies of their own testimony and documents and the testimony and documents of their employees]; *White v. Jaegerman, supra,* 51 F.R.D. at p. 163; *Herbst v. Able, supra,* 63 F.R.D. at p. 138.)

For all these reasons, it is plain that the trial court did not abuse its discretion.

## Disposition

The petition for a writ of mandate is denied. Our stay order is vacated, effective 10 days from the date this opinion becomes final. Guess is awarded its costs of these writ proceedings.

Spencer, P. J., and Mallano, J., concurred.