Filed 2/5/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BARRY DODD, | B247493 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YC066746) |
| v. | |
| MARIA FRANCESCA CRUZ, | |
| Defendant and Appellant; | |
| MEDICAL FINANCE, LLC, | |
| Movant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Phrasel L. Shelton., Judge. (Retired Judge of the L.A. Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed.

Horwitz & Levy, Robert H. Wright, Daniel J. Gonzalez, Julie L. Woods; Calendo, Puckett, Sheedy & DiCorrado and Richard A. Dicorrado for Defendant and Appellant.

Knapp, Petersen & Clarke, Mitchell B. Ludwig and Barbara Ciolino for Movant and Respondent.

Michael D. Waks; Alderlaw, C. Michael Alder and Stephen K. McElroy for Plaintiff and Respondent.

———————————

## INTRODUCTION

In this personal injury case, a third party, known as a "factor," purchased from a health care provider a medical lien on the plaintiff's recovery, if any, against the defendant. We must decide whether the defendant is entitled to obtain documents through the discovery process relating to the factor's contractual relationship with the health care provider, including documents disclosing what the factor paid for the lien.

The parties to this appeal are appellant and defendant Maria Francesca Cruz, respondent and plaintiff Barry Dodd, and third party witness and respondent Medical Finance LLC (MedFi). Cruz appeals an order granting MedFi's motion to quash Cruz's subpoena and awarding MedFi $5,600 in monetary sanctions. Dodd joined MedFi's motion. We conclude the superior court abused its discretion in granting the motion and awarding the sanctions.

## FACTS

Dodd and Cruz were involved in a motor vehicle accident. In his complaint, Dodd alleged that Cruz's negligent operation of a motor vehicle proximately caused Dodd to sustain personal injuries.

Dodd contends he sustained a shoulder injury, specifically a torn rotator cuff. He received treatment for this injury at a medical center operated by Kaiser Permanente. Subsequently, a physician at Coast Surgery Center of South Bay (Coast) performed a shoulder surgery on Dodd. Cruz contends Dodd's attorney, Michael Waks, referred Dodd to Coast.[1]

---

[1] Dodd does not admit or deny this allegation. He instead contends Cruz failed to file admissible evidence of Waks's alleged referral. Cruz's attorney, Jason Bluver, attached to his declaration two documents he obtained from Coast in response to a subpoena. The first was a print-out of an email exchange between Waks and an employee of Coast, wherein Waks "approved" a "lien" by Coast relating to Dodd's shoulder surgery. Although Dodd objected to Bluver's characterization of the document as an approval of a surgical procedure, he did not object to the admissibility of the document itself. The second document is entitled "Scheduling Form." It relates to Coast's treatment of Dodd. The document states that Dodd was "Referred by" Waks.

Before the surgery, Dodd did not know what Coast's charges for the procedure would be. He did know, however, it would be on a "lien basis." Dodd later learned Coast's bill was between $40,000 and $50,000.

On the same day as Dodd's surgery, Coast sold to MedFi its account receivable and lien against Dodd for payment of its charges. MedFi claims that it is in the business of purchasing accounts receivable from businesses, including health care providers, "at a discount." According to MedFi's vice president William Simon, MedFi "expects to be paid" by Dodd (and other patients) for 100 percent of the "book value" of the health care provider's charges "regardless of what the court or jury decides is the reasonable costs" of Dodd's medical care. Nothing in the record, however, indicates Dodd agreed that the amount of MedFi's lien would be the full amount of Coast's charges.

MedFi admits that its president is Michael Waks, Dodd's attorney. It further admits that one of Coast's limited partners, Roy Simon, M.D., is the brother of MedFi's vice president, William Simon. Cruz contends that there was an arrangement among MedFi, Waks and Coast that was rife with the potential for collusion. MedFi and Dodd vigorously deny this allegation.

After this litigation commenced, Cruz's attorney served MedFi with a deposition subpoena for production of business records. The subpoena sought broad categories of documents. In the wake of MedFi's refusal to provide documents in response to the subpoena, attorneys for Cruz, Dodd and MedFi exchanged extensive correspondence in an effort to resolve their differences without the need for court intervention.

The dispute was narrowed to three documents identified in MedFi's log of withheld documents: (1) a contract between MedFi and Coast dated about four years before Dodd's surgery, (2) a redacted "Creditor's Assignment of Claim," and (3) "MedFi's Open Lien Detail." MedFi conceded that these documents related to its "lien contracts" with Coast and included evidence of the amount MedFi paid for its lien

---

Cruz asserted no objections to the admissibility of this document. We conclude there was substantial evidence to support Cruz's allegation that Waks referred Dodd to Coast.

on Dodd's recovery, if any, against Cruz. It objected to the production of these documents, however, on the grounds that they were confidential, proprietary and irrelevant.

Unable to resolve this discovery dispute, MedFi filed a motion to quash Cruz's subpoena. In the motion, MedFi sought $5,600 in monetary sanctions against Cruz and her counsel. As support for this claim, Medfi's attorney filed a declaration, wherein she stated that MedFi would incur $5,600 in attorney fees in connection with the motion to quash. Dodd joined the motion.

On January 17, 2013, the superior court entered an order granting MedFi's motion to quash on the ground that the information sought by the subpoena is irrelevant. The order also imposed monetary sanctions on Cruz and her counsel in the amount of $5,600. This appeal followed.

## ISSUES

There are two main issues on appeal:

1. Can Cruz challenge the merits of the superior court's decision to quash the subpoena, or is her appeal limited to the issue of monetary sanctions?

2. Did the superior court abuse its discretion in granting MedFi's motion to quash?

## DISCUSSION

1. *The Sanctions Order is Appealable*

If the superior court finds that a motion to quash a subpoena is "opposed in bad faith or without substantial justification," the court has the discretion to impose monetary sanctions on the opposing party in the amount of the reasonable expenses the moving party incurred in making the motion. (Code Civ. Proc., § 1987.2, subd. (a).)[2] An order directing payment of monetary sanctions over $5,000 is immediately appealable. (§ 904.1, subd. (a)(12); *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262,

---

[2] Except as otherwise stated, all future statutory references are to the Code of Civil Procedure.

4

264 (*Mileikowsky*).)  Respondents concede that Cruz can appeal the January 17, 2013, order to the extent she challenges the superior court's award of sanctions.

      2.    *Cruz Can Challenge the Merits of the Superior Court's Decision to Quash the Subpoena*

Respondents contend Cruz cannot challenge on appeal the superior court's underlying ruling quashing Cruz's subpoena.  We disagree.

It is true that a discovery order is ordinarily not separately appealable.  (*Macaluso v. Superior Court* (2013) 219 Cal.App.4th 1042, 1049.)  A superior court's decision on a discovery matter, however, can be reviewed on appeal if it "necessarily affects" an appealable order.  (§ 906.)  Thus if a nonappealable substantive ruling on a discovery matter is "inextricably intertwined" with an appealable order directing monetary sanctions, the substantive ruling may be reviewed.  (*Mileikowsky*, *supra*, 128 Cal.App.4th at p. 276.)

Here, the superior court's ruling granting MedFi's motion to quash was inextricably intertwined with its imposition of $5,600 in monetary sanctions.  The amount of the sanctions was based solely on the amount of attorney fees MedFi incurred in bringing the motion.  If the superior court erroneously quashed the subpoena, there was simply no basis for monetary sanctions.  Accordingly, in this appeal of the sanctions award, we may review the merits of the superior court's ruling on MedFi's motion to quash.

Respondents argue the superior court could have imposed monetary sanctions against Cruz and her counsel even if it denied MedFi's motion to quash, on the ground that the purpose of the subpoena was to embarrass and harass MedFi's president and Dodd's counsel, Michael Waks.  We disagree.  The superior court did not make any findings regarding the alleged purpose of the subpoena and there is no evidence that Cruz or her attorneys subjectively believed the opposition to the motion to quash was unjustified.  Moreover, as we explain *post*, the three documents at issue were clearly discoverable and Cruz had solid and compelling reasons to seek these documents.  Cruz therefore had substantial justification to oppose the motion to quash.

5

3. *The Superior Court Abused Its Discretion in Granting the Motion*

  a. *The Subpoena Seeks Discoverable Documents Relevant to Dodd's Alleged Economic Damages*

Under the Civil Discovery Act (§ 2016.010 et seq.), the scope of permissible discovery is very broad. "[A]ny party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (§ 2017.010.) "In the context of discovery, evidence is 'relevant' if it might reasonably assist a party in evaluating its case, preparing for trial, or facilitating a settlement. Admissibility is *not* the test, and it is sufficient if the information sought might reasonably lead to other, admissible evidence." (*Glenfed Development Corp. v. Superior Court* (1997) 53 Cal.App.4th 1113, 1117.) "Any doubts regarding relevance are generally resolved in favor of allowing the discovery." (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 98.)

Although the superior court has discretion in granting or denying discovery motions, it is obligated to construe the discovery statutes liberally in favor of disclosure. (*Emerson Electric Co. v. Superior Court* (1997) 16 Cal.4th 1101, 1107.) In reviewing discovery orders, appellate courts " 'should not use the trial court's discretion argument to defeat the liberal policies of the statute.' " (*Ibid.*, citing *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 379.)

The broad scope of permissible discovery under the Civil Discovery Act "is equally applicable to discovery of information from a nonparty as it is to parties in the pending suit." (*Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1062.) Prior to trial, a party may serve a deposition subpoena for the production of business records on a nonparty. (§ 2020.410.) Unlike a trial subpoena for documents (see § 1985, subd. (b)), a deposition subpoena for the production of business records "need not be accompanied by an affidavit or declaration showing good cause for the production of the business records designated in it." (§ 2020.410, subd. (c).)

6

Turning to the subpoena in this case, we must determine whether the three documents at issue are discoverable. All parties to this appeal agree that the subject matter of the pending action includes the amount of economic damages, if any, Dodd may recover for his medical treatment at Coast. Cruz contends that the subpoenaed documents are discoverable because they are relevant to such damages or, at a minimum, the subpoena is reasonably calculated to lead to the discovery of admissible evidence relating to. MedFi and Dodd dispute these contentions.

In order to resolve this issue, we must first review the measure of damages for past medical expenses. "[A] plaintiff may recover as economic damages *no more* than the reasonable value of the medical services rendered and is not entitled to recover the reasonable value if his or her actual loss was less." (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 555 (*Howell*).) In other words, "[d]amages for past medical expenses are limited to the lesser of (1) the amount paid or incurred for past medical expenses and (2) the reasonable value of the services." (*Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1325-1326 (*Corenbaum*).)

The amount a health care provider bills a plaintiff for its medical services is not relevant to the amount of the plaintiff's economic damages for past medical services.[3] (*Corenbaum*, *supra*, 215 Cal.App.4th at pp. 1318, 1330.) This is because " 'a medical care provider's billed price for particular services is not necessarily representative of

---

[3] As stated *ante*, MedFi has taken the position that the amount of its lien is the full amount of Coast's bill, and that it expects to be paid by Dodd for the full amount regardless of what a trier of fact decides is the reasonable value of Coast's services. This appears to raise a conflict of interest for Dodd's attorney. As president of MedFi and to the extent he has a financial stake in that company, Waks has a fiduciary duty and perhaps an economic interest in making sure MedFi collects the full amount of its claimed lien, or as much of it as possible. Conversely, as Dodd's attorney, Waks has a duty to minimize the amount of MedFi's lien. This conflict could manifest itself in a variety of circumstances. For instance, if Cruz makes a payment to Dodd pursuant to a settlement agreement and without a jury's determination of the reasonable value of Coast's medical services, it is difficult to imagine how Waks could take a position on the amount of MedFi's lien without violating his duties to either Dodd or MedFi.

7

either the cost of providing those services or their market value.' " (*Id.* at p. 1326, quoting *Howell*, *supra*, 52 Cal.4th at p. 564.)

In *Howell*, a case where the plaintiff's medical costs were paid by her insurer, our Supreme Court discussed the difficulty of determining the reasonable value of medical services. The court recognized that "there appears to be not one market for medical services but several, with the price of services depending on the category of payer and sometimes on the particular government or business entity paying for the services. Given this state of medical economics, how a market value other than that produced by negotiation between the insurer and the provider could be identified is unclear." (*Howell*, *supra*, 52 Cal.4th at p. 562.)

The *Howell* court concluded "that when a medical care provider has, by agreement with the plaintiff's private health insurer, accepted as full payment for the plaintiff's care an amount less than the provider's full bill, evidence of that amount is relevant to prove the plaintiff's damages for past medical expenses and, assuming it satisfies other rules of evidence, is admissible at trial." (*Howell*, *supra*, 52 Cal.4th at p. 567; accord *Corenbaum*, *supra*, 215 Cal.App.4th at p. 1327.) This holding is consistent with earlier cases that held the amount paid for medical services "is some evidence of reasonable value." (*Dewhirst v. Leopold* (1924) 194 Cal. 424, 433; accord *Francis v. Sauve* (1963) 222 Cal.App.2d 102, 124; *Malinson v. Black* (1948) 83 Cal.App.2d 375, 379.)

The *Howell* opinion expressly distinguished its fact pattern from *Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288 (*Katiuzhinsky*), where the plaintiffs remained fully liable to a factor for the amount of the medical provider's charges for care and treatment. (*Howell*, *supra*, 52 Cal.4th at p. 557, citing *Katiuzhinsky*, at p. 1296.) The amount paid by a factor for a medical lien may be different than the reasonable value of medical services because when a health care provider sells its lien to a factor, it "transfers the expense of collection and the risk of nonpayment onto someone else." (*Katiuzhinsky*, at p. 1298.)

8

Here, the subpoena is reasonably calculated to lead to the discovery of admissible evidence relating to the reasonable value of Coast's services. The subpoenaed documents, for example, could reveal what *Coast* believed was the reasonable value of its services, apart from its calculation of the expense and risk of collection. This would be at least some evidence of the reasonable value of Coast's services.

Moreover, as MedFi and Dodd concede, in order to support their respective arguments regarding the reasonableness of the cost of Coast's medical services, both parties will submit expert testimony. A qualified expert may opine on the reasonable value of medical services based on matter, "whether or not admissible, that is of a type that reasonably may be relied upon." (Evid. Code, § 801, subd. (b).) Conceivably, an expert retained by Cruz could base his or her opinion about the reasonable value of Coast's medical services, at least in part, on the amount Coast accepted from MedFi as full payment for its services.[4]

The subpoena is also reasonably calculated to lead to the discovery of admissible evidence relating to the amount of medical expenses Dodd actually incurred. Although MedFi and Dodd contend that Dodd is responsible for 100 percent of Coast's *billed* amount, Cruz disputes that contention. Cruz is entitled to obtain documents relating to MedFi's collection activity and policies and procedures, because they may support Cruz's position that Dodd is not actually responsible for the full amount billed.

We need not decide at this point whether the subpoenaed documents—writings that are not in the record and that we have not reviewed—are admissible. It is clear that Cruz's demand for these documents was reasonably calculated to lead to the discovery of admissible evidence. The superior court thus abused its discretion in granting MedFi's motion to quash.

---

[4]     We express no opinion about whether the amount Coast accepted by agreement with MedFi as full payment for Dodd's medical care is relevant and admissible at trial to prove Dodd's damages for past medical expenses.

Respondents' reliance on *Katiuzhinsky* is misplaced. There, a medical finance company (the factor) purchased accounts receivable from the plaintiffs' health care providers. (*Katiuzhinsky*, *supra*, 152 Cal.App.4th at p. 1291.) At trial, the superior court forbade the plaintiffs from recovering or introducing evidence of medical expenses beyond the discounted rate paid by the factor to the plaintiffs' providers. (*Ibid*.) The Court of Appeal reversed. (*Id.* at p. 1299.) It held, inter alia, that "there was no basis in law to prevent the jurors from receiving evidence of the amounts billed, as they reflected on the nature and extent of plaintiffs' injuries and were therefore relevant to their assessment of an overall general damage award." (*Id* at p. 1296.)

In this case, by contrast, we are still in the discovery stage and do not need to decide what evidence is admissible at trial. Except as expressly provided herein, nothing in this opinion prohibits Dodd from arguing and admitting evidence showing that the amount MedFi paid for its lien was *less* than the reasonable value of Coast's medical services. *Katiuzhinsky* is distinguishable from this case because it addressed an issue we do not reach here, namely whether the amount a factor pays for a medical lien is, as a matter of law, the *maximum* amount the plaintiff can recover as economic damages for the associated medical services. *Katiuzhinksy* therefore does not support respondents' arguments in this appeal.[5]

---

[5] We disagree with *Katiuzhinsky* to the extent it held that the amount the plaintiffs' health care providers "billed" or "charged" was admissible to prove the reasonable value of the medical services provided. (*Katiuzhinsky*, *supra*, 152 Cal.App.4th at pp. 1296, 1298.) In *Corenbaum*, this court held that "evidence of the full amounts billed for plaintiffs' medical care was not relevant to the amount of damages for past medical services." (*Corenbaum*, *supra*, 215 Cal.App.4th at p. 1319.)

b. *We Do Not Reach the Issue of Whether the Information Cruz Seeks Could Show Collusion Among Coast, MedFi and Dodd's Attorney*

Cruz argues the subpoena served on MedFi is reasonably calculated to lead to the discovery of admissible evidence because the subpoenaed documents could show collusion among Coast, MedFi and Dodd's attorney with respect to what Coast charged for its services and whether Dodd was really responsible to pay MedFi for the full amount of the charges. Respondents dispute there was any collusion. We do not reach this issue because we hold the subpoenaed documents are clearly discoverable regardless of whether there was collusion, as Cruz contends.

c. *MedFi Forfeited Its Arguments Regarding Its "Confidential and Proprietary" Objection*

MedFi objected to the subpoena on the grounds that the documents demanded contained "confidential and proprietary" information. Respondents did not, however, make a legally cognizable, reasoned argument or cite any legal authority to support this objection in their joint brief. Respondents thus forfeited this issue on appeal.[6] (*Nielson v. Gibson* (2009) 178 Cal.App.4th 318, 324; *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303).)

---

[6] Nothing in this opinion prohibits the superior court from entering an appropriate protective order regarding alleged confidential and proprietary information found in the documents at issue. (See e.g. § 1987.1, subd. (a).)

**DISPOSITION**

The order granting MedFi's motion to quash is reversed. Appellant is awarded costs on appeal.

**CERTIFIED FOR PUBLICATION**

KITCHING, J.

We concur:

CROSKEY, Acting P. J.

ALDRICH, J.

12