Filed 5/13/13 (unmodified opn. attached)

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| JOHN CORENBAUM, | B236227 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. NC054159) |
| v. | |
| DWIGHT ERIC LAMPKIN, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |
| CHARLES CARTER et al., | B237871 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. NC054349) |
| v. | |
| DWIGHT ERIC LAMPKIN, | |
| Defendant and Appellant. | |


BY THE COURT:

The opinion filed in this matter on April 30, 2013, is hereby modified in the following manner:

Page 21: The last sentence of footnote 12 is hereby deleted and replaced with the following:

As the circumstance is not presented by the record before us, we do not reach or consider the issues that might arise in the event that a defendant seeks to introduce evidence that the reasonable value of past medical services was *less* than the amount accepted by the medical providers as full payment.

[NO CHANGE IN JUDGMENT]

***CERTIFIED FOR PUBLICATION***


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| JOHN CORENBAUM, | B236227 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. NC054159) |
| v. | |
| DWIGHT ERIC LAMPKIN, | |
| Defendant and Appellant. | |
| CHARLES CARTER et al., | B237871 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. NC054349) |
| v. | |
| DWIGHT ERIC LAMPKIN, | |
| Defendant and Appellant. | |


APPEALS from judgments and an order of the Superior Court of Los Angeles County, Ross M. Klein, Judge.  Judgments affirmed in part and reversed in part, and the matter is remanded with directions; order affirmed.

1

Sutton & Murphy, Michael S. Sutton; Rigg & Dean, Warren C. Dean, Jr., and Regan Dean Phillips, for Plaintiffs and Appellants.

Barbara A. Jones, Kelly Bagby and Kimberly Bernard for AARP Foundation as Amicus Curiae on behalf of Plaintiffs and Appellants.

Arkin Law Firm, Sharon J. Arkin; Khorrami, Scott H. Z. Sumner; LaFave & Rice, John J. Rice; Kabateck Brown Kellner, Brian Kabateck and Richard Kellner for Consumer Attorneys of America as Amicus Curiae on behalf of Plaintiffs and Appellants.

The Phillips Firm, Thomas M. Phillips, Timothy E. Kearns and Michael A. Kramer; Masserman & Ducey and Mitchell F. Ducey, for Defendant and Appellant.

Coddington, Hicks & Danforth, R. Wardell Loveland and Hyon M. Kientzy for AAA Northern California, Nevada & Utah Insurance Exchange as Amicus Curiae on behalf of Defendant and Appellant.

Greines, Martin, Stein & Richland and Robert A. Olson for Association of Southern California Defense Counsel and Association of Defense Counsel of Northern California and Nevada as Amici Curiae on behalf of Defendant and Appellant.

Cole Pedroza, Curtis A. Cole, Kennedy R. Pedroza and Cassidy C. Davenport for California Medical Association, California Dental Association and California Hospital Association as Amici Curiae on behalf of Defendant and Appellant.

Fred J. Hiestand for Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Appellant.

2

Newdorf Legal, David B. Newdorf and Vicki F. Van Fleet for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Appellant.

Hager Dowling Lim & Slack, John V. Hager for Mercury Insurance Group as Amicus Curiae on behalf of Defendant and Appellant.

Sedgwick and Christina J. Imre for Personal Insurance Federation of California, Pacific Association of Domestic Insurance Companies, Property Casualty Insurers' Association of America and National Association of Mutual Insurance Companies as Amici Curiae on behalf of Defendant and Appellant.

———————————

This case requires us to consider the impact and implications of the California Supreme Court's opinion in *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541 (*Howell*). As in *Howell*, the medical providers who treated plaintiffs in this case accepted, pursuant to prior agreements, less than the full amount of their medical billings as payment in full for their services. We must determine the admissibility in evidence of the full amount of an injured plaintiff's medical billings not only with respect to damages for past medical expenses, but also with respect to future medical expenses and noneconomic damages.

John Corenbaum and Charles Carter (Carter) suffered injuries when a vehicle driven by Dwight Eric Lampkin collided with a taxicab in which they were passengers. Lampkin was convicted of fleeing the scene of an injury accident (Veh. Code, § 20001, subd. (a)), but was not found guilty on another count for driving under the influence (*id.*, § 23153, subd. (a)). Corenbaum, Carter and Daniella Carter then filed two civil actions against Lampkin, which were later consolidated. After a trial, the jury found that Corenbaum and Carter, respectively, suffered approximately $1.8 million and $1.4 million in compensatory damages, and that Daniella Carter suffered $75,000 in damages for loss of consortium. The jury also awarded Corenbaum and Carter $20,000 each in punitive damages. Lampkin appeals the separate judgments entered in favor of Corenbaum and Carter. Plaintiffs filed their own appeal from the denial of their motion for an attorney fee award under Code of Civil Procedure section 1021.4 (section 1021.4).

4

Lampkin contends the trial court erred by admitting (1) evidence of the full amounts billed for plaintiffs' medical care, rather than the amounts actually paid and accepted as full payment by plaintiffs' medical providers, and (2) evidence of his prior arrest for driving under the influence. He also contends Carter is not entitled to an award of punitive damages because he did not seek punitive damages in his complaint, and the amount of punitive damages awarded to both Corenbaum and Carter is excessive relative to his ability to pay. We conclude that evidence of the full amounts billed for plaintiffs' medical care was not relevant to the amount of damages for past medical services, damages for their future medical care or noneconomic damages. Because plaintiffs have not shown that evidence of the full amounts of their medical bills was relevant to any other issue, the admission of such evidence was error. We reject Lampkin's challenges to the punitive damage awards. We therefore will reverse, in part, the judgments in favor of Corenbaum and Carter and remand the matter for a new trial limited to the issue of compensatory damages.

In their appeal, plaintiffs contend the trial court erroneously held that section 1021.4, which authorizes an attorney fee award to the prevailing plaintiff "[i]n an action for damages against a defendant based upon that defendant's commission of a felony offense for which that defendant has been convicted," does not authorize a fee award in these circumstances. We conclude that the court properly held that this action is not based on the felony offense for which Lampkin was convicted. We therefore will affirm the order denying a fee award.

5

## FACTUAL AND PROCEDURAL BACKGROUND

1.      *Plaintiffs' Injuries and Lampkin's Arrest and Conviction*

Corenbaum and Carter were passengers in a taxicab traveling east on Broadway in downtown Long Beach at approximately 1:30 a.m. on April 5, 2008, when a Lexus automobile traveling south on Atlantic Avenue collided with the taxicab in the intersection of those two streets.  A witness in the vehicle immediately behind the taxicab testified that the Lexus ran the red light traveling at a speed of approximately 50 to 70 miles per hour.  The posted speed limit on Atlantic Avenue was 25 miles per hour.  Both vehicles involved in the collision came to a rest, and the driver of the Lexus fled on foot.  Corenbaum and Carter suffered serious injuries.

Lampkin was one of two registered owners of the Lexus at the time of the collision.  He had spent the evening of April 4, 2008, eating dinner with friends at a restaurant and nightclub in downtown Long Beach.  He consumed copious amounts of alcohol that evening.  Security guards asked him to leave the restaurant and escorted him out at approximately 11:30 p.m.  His companions left as well, and the group walked to a bar nearby.  While the group was walking to the bar, Lampkin stumbled and fell to the ground.  He later separated from the group, walked away from the others and fell a second time.

Nicolle Topp was one of several friends who were with Lampkin on the evening of April 4, 2008.  After leaving the bar, several of them went to Topp's condominium a few blocks away.  Lampkin arrived later, at approximately 2:15 a.m., apparently still intoxicated.  He fell asleep on the floor.  After he awakened in the morning he stated

6

that his keys, wallet, cell phone and jacket were missing. Lampkin and Topp searched for those items where Lampkin said he might have left them, but found nothing, and then went to the parking garage near the restaurant where he said he had parked his Lexus, but did not find his car there. Lampkin called the police and reported his car stolen.

The police interviewed Lampkin that morning and arrested him. A jury found him guilty of fleeing the scene of an injury accident (Veh. Code, § 20001, subd. (a)), a felony, and fleeing the scene of an accident causing property damage (*id.*, § 20002, subd. (b)), a misdemeanor, in January 2009. Another count for driving under the influence (Veh. Code, § 23153, subd. (a)) apparently was dismissed because the People exceeded the statutory time to bring the case to trial. He was sentenced to three years' imprisonment and ordered to pay $271,335 in restitution fines (Pen. Code, § 1202.4, subd. (f)).

2.      *Proceedings Before Trial*

Corenbaum filed a complaint against Lampkin and others in February 2010 and filed a first amended complaint in August 2010 alleging counts against Lampkin for negligence and gross negligence, and seeking punitive damages. Charles and Daniella Carter, husband and wife, filed a complaint against Lampkin and others in March 2010 alleging counts against Lampkin for negligence and loss of consortium. The two actions were consolidated before trial.

Lampkin filed a motion in limine before trial to exclude any evidence of his arrest and conviction of driving under the influence arising from a prior incident that

7

occurred on December 23, 2007. He argued that such evidence was relevant only to his character and was inadmissible to show his lack of credibility, pursuant to Evidence Code section 787. He also argued that the evidence should be excluded under Evidence Code section 352 because his conviction for that offense did not occur until after the incident in this case. The trial court denied the motion in limine, stating that the evidence "shows a continuing pattern of drinking, becoming impaired and driving as to the issue of malice." The court suggested that counsel request a limiting instruction.

Plaintiffs filed a motion in limine before trial to exclude any evidence of the payment of plaintiffs' medical bills by a collateral source. On the same day, Lampkin filed a "Request for Court to Hold a Post-Verdict Hearing on Reduction of Plaintiffs' Medical Expenses to the Amount Incurred," requesting a postverdict hearing "in the event that the jury verdict includes damages for past medical expenses in an amount exceeding the amount paid for those medical services." The trial court granted plaintiffs' motion in limine "without prejudice" subject to a posttrial "*Hanif/Nishihama*" motion.[1] The court also granted Lampkin's request to hold a postverdict hearing, stating, " . . . we'll have the hearing."

3. *Trial and Verdict*

A jury trial in the consolidated actions commenced in May 2011 with Lampkin as the sole defendant appearing at trial. Lampkin admitted that he was negligent before

---

[1] *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635, 640-641 (*Hanif*), and *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 306-307 (*Nishihama*), held, generally, that if the plaintiff's medical providers agreed to accept less than the full amount billed as full payment, the damages for past medical expenses could not exceed the amount actually paid or incurred on the plaintiff's behalf.

jury selection began. Charles and Daniella Carter moved before opening statements to amend their complaint by adding a count for willful misconduct and a prayer for punitive damages. The trial court granted the motion.

In accordance with the trial court's in limine rulings, the jury heard evidence of the full amounts billed for Corenbaum's and Carter's past medical care and heard no evidence of the lesser amounts accepted by their medical providers as full payment pursuant to prior agreements with Lampkin's private insurers. The trial court, over Lampkin's objection, also allowed him to be questioned regarding his arrest for driving under the influence on December 23, 2007. The court instructed the jury, including an instruction that Lampkin had admitted his negligence.

The jury returned a special verdict on June 3, 2011, finding that Lampkin's negligence was a substantial factor in causing harm to each of the three plaintiffs. It found that Corenbaum and Carter had suffered past and future economic and noneconomic damages totaling $1,834,602 and $1,392,141.87, respectively, and that Daniella Carter had suffered $75,000 in damages for loss of consortium.[2] It also found that Corenbaum and Carter, respectively, bore 10 percent and 20 percent of the responsibility for their own injuries. The jury also found that Lampkin had acted with malice.

Lampkin testified in the second phase of the trial relating to punitive damages. He admitted that he had been served with a subpoena to produce at trial all records in

---

[2] The special verdict included specific findings as to the amounts of past economic damages, future economic damages and noneconomic damages suffered by each plaintiff.

his possession, custody or control evidencing his "current wealth, assets and liabilities." He acknowledged that he had produced no documents and stated that he had no assets or wealth and nothing to produce. He later conceded, however, that he had $300 in a savings account and had a bank statement or bank book evidencing that account, but had failed to produce it. He testified by way of explanation, "I thought it [the subpoena] was assets and wealth. It didn't say anything about checking account or savings account." He testified that his only assets were his savings account and his personal clothing, the value of which he could not estimate. The jury returned a verdict, also on June 3, 2011, awarding punitive damages in the amount of $20,000 each to Corenbaum and Carter and awarding no punitive damages to Daniella Carter.

4.      *Posttrial Motions, Judgments and Appeals*

On June 24, 2011, Lampkin filed a motion to reduce the compensatory damage awards pursuant to *Hanif*, *supra*, 200 Cal.App.3d 635, and *Nishihama*, *supra*, 93 Cal.App.4th 298, and pursuant to the trial court's pretrial ruling granting Lampkin's request to hold a postverdict hearing on such a reduction. Lampkin sought to reduce the awards by the difference between the full amounts billed for past medical expenses and the amounts actually accepted by plaintiffs' medical providers as full payment for the services provided. The hearing on the motion was noticed for July 19, 2011, but later was continued to August 23 and then to September 6, 2011.

On July 5, 2011, the trial court entered a separate judgment against Lampkin for each plaintiff, awarding Corenbaum and Carter, respectively, $1,537,985.97 and $1,108,362.08 in compensatory and punitive damages, and awarding Daniella Carter

10

$60,000 in compensatory damages.[3]  The judgments in favor of Corenbaum and Carter also awarded $15,000 in damages against the co-owner of the Lexus, who did not appear at trial.

Lampkin filed a new trial motion challenging the punitive damage awards as excessive and unsupported by the evidence.  He argued that there was insufficient evidence of his financial condition at the time of trial and that the awards were excessive in light of Lampkin's testimony as to his limited assets.  He also moved for judgment notwithstanding the verdict on the same grounds.  The trial court denied both motions on August 17, 2011.

The California Supreme Court filed its opinion in *Howell*, *supra*, 52 Cal.4th 541, on August 18, 2011.

The trial court heard Lampkin's motion to reduce the compensatory damage awards on September 6, 2011.  The court denied the motion, stating in a minute order, "[w]hile this Court feels that a reduction is appropriate, it is without jurisdiction to do so.  As this Court has already denied the Motion for New Trial, the jurisdiction now rests with the Court of Appeal."

Corenbaum filed a motion for an award of attorney fees pursuant to section 1021.4.[4]  Charles and Daniella Carter filed a separate fee motion under the same

---

[3]     The amounts awarded reflect reductions for comparative negligence and a prior settlement.

[4]     Section 1021.4 states:  "In an action for damages against a defendant based upon that defendant's commission of a felony offense for which that defendant has been

11

statute. The trial court denied the motions in an order dated September 6, 2011, stating that the felonious conduct for which Lampkin was convicted was fleeing the scene of an injury accident rather than causing or being involved in an injury accident, and that plaintiffs' injuries resulted from the latter rather than the former.

Lampkin filed a notice of appeal on September 16, 2011, stating that he was appealing the judgment entered on July 5, 2011 (No. B236227).[5] Plaintiffs jointly filed a notice of appeal from the order denying their motions for attorney fees (No. B237871). We have consolidated the two appeals.

## CONTENTIONS

Lampkin contends the trial court erred by (1) admitting evidence of the full amounts billed for Corenbaum's and Carter's medical care when the amounts accepted by their medical providers as full payment were less than the amounts billed; (2) admitting evidence of his prior arrest for driving under the influence on December 23, 2007; (3) instructing the jury on punitive damages as to Carter despite the absence of a claim for punitive damages in Carter's complaint; and (4) denying his motion for a new trial on punitive damages.

Corenbaum and Carter contend the trial court erroneously concluded that section 1021.4 does not authorize an attorney fee award in these circumstances.

---

convicted, the court may, upon motion, award reasonable attorney's fees to a prevailing plaintiff against the defendant who has been convicted of the felony."

[5] We liberally construe the notice of appeal (Cal. Rules of Court, rule 8.100(a)(2)) as an appeal from each of the separate judgments entered on July 5, 2011, in favor of Corenbaum and Carter.

12

## DISCUSSION

1. *The Admission of Evidence of the Full Amounts Billed for Plaintiffs'
Medical Care Was Error*

    a.        *Howell v. Hamilton Meats & Provisions, Inc.*

The California Supreme Court in *Howell*, *supra*, 52 Cal.4th 541, held that an injured plaintiff whose medical expenses are paid by private insurance can recover damages for past medical expenses in an amount no greater than the amount that the plaintiff's medical providers, pursuant to prior agreement, accepted as full payment or, to the extent that payment is still owing, the amount that the medical providers had agreed to accept as full payment for the services provided. (*Id.* at p. 566.) The plaintiff's pecuniary loss is limited to the amount paid or incurred for past medical services, so the plaintiff cannot recover damages in excess of that amount. (*Id.* at p. 555.) *Howell* approved the general rule from *Hanif*, *supra*, 200 Cal.App.3d 635, 640-641, and *Nishihama*, *supra*, 93 Cal.App.4th 298, 306-307, in this regard. (*Howell*, *supra*, at pp. 553-555.)

*Howell* also held that limiting a plaintiff's recovery in this manner does not contravene the collateral source rule. (*Howell*, *supra*, 52 Cal.4th at pp. 563-566.) The collateral source rule provides that the damages awarded to an injured plaintiff cannot be reduced by the amount paid on the plaintiff's behalf by a source independent of the tortfeasor, such as an insurer. (*Id.* at p. 551; *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 (*Helfend*).) "The rule thus dictates that an injured plaintiff may recover from the tortfeasor money an insurer has paid to medical providers on his

13

or her behalf." (*Howell*, *supra*, at p. 551.) *Helfend* reaffirmed California's acceptance of the collateral source rule, but did not explain "*how* the collateral source rule would apply to damages for past medical expenses when the amount billed for medical services substantially exceeds the amount accepted in full payment."[6] (*Howell*, *supra*, at p. 552.)

Medical providers typically enter into agreements with private insurers in which the medical providers agree to accept discounted payments for the services provided to insured patients. (*Howell*, *supra*, 52 Cal.4th at pp. 558, 560-561.) The term "negotiated rate differential" refers to the difference between the full amount billed and the amount that the provider has agreed to accept from the insurer as full payment. (*Id.* at p. 555.) An insured plaintiff incurs no liability for the negotiated rate differential and suffers no pecuniary loss in that amount. (*Id.* at pp. 555, 557.) Instead, the plaintiff's pecuniary loss is limited to the amount that the medical providers accepted or agreed to accept as full payment. (*Id.* at p. 555.)

---

[6]     *Howell* addressed this issue by analyzing four specific questions: "(1) Was *Hanif* correct that a tort plaintiff can recover only what has been paid or incurred for medical care, even if that is less than the reasonable value of the services rendered? (2) Even if *Hanif*, which involved Medi–Cal payments, reached the right result on its facts, does its logic extend to plaintiffs covered by private insurance? (3) Does limiting the plaintiff's recovery to the amounts paid and owed on his or her behalf confer a windfall on the tortfeasor, defeating the policy goals of the collateral source rule? (4) Is the difference between the providers' full billings and the amounts they have agreed to accept from a patient's insurer as full payment—what the appellate court below called the 'negotiated rate differential'—a benefit the patient receives from his or her health insurance policy subject to the collateral source rule?" (*Howell, supra,* 52 Cal.4th at p. 555.) *Howell* answered those questions: yes, yes, no and no. (*Id.* at pp. 555-566.)

14

To be recoverable in damages, a plaintiff's medical expenses must be both incurred and reasonable. (*Howell, supra,* 52 Cal.4th at p. 555.) Damages for past medical expenses are limited to the lesser of (1) the amount paid or incurred for past medical expenses and (2) the reasonable value of the services.[7] (*Id.* at p. 556.) " ' "[R]easonable value" is a term of limitation, not of aggrandizement.' (*Hanif, supra,* 200 Cal.App.3d at p. 641.)" (*Id.* at p. 553.) " '[W]hen the evidence shows a sum certain to have been paid or incurred for past medical care and services, whether by the plaintiff or by an independent source, that sum certain is the most the plaintiff may recover for that care despite the fact it may have been less than the prevailing market rate.' " (*Id.* at p. 549, fn. 1, quoting *Hanif, supra*, 200 Cal.App.3d at p. 641; see also *Howell*, *supra*, 52 Cal.4th at p. 555.) Thus, where a medical provider has agreed, before treating a plaintiff, to accept a certain amount for its services, that constitutes the provider's price and there is no need to determine a reasonable value for those services. (*Howell, supra,* at p. 559.)

*Howell* also stated that the full amount billed by medical providers is not an accurate measure of the value of medical services. (*Howell*, *supra*, 52 Cal.4th at p. 562.) *Howell* addressed this issue in rejecting the argument that limiting the plaintiff's recovery to the amount paid or incurred for medical expenses would result in a windfall to the tortfeasor. (*Id.* at pp. 560-563.) *Howell* noted that there can be significant disparities between the amounts charged by medical providers and the costs

---

[7]     "The rule that medical expenses, to be recoverable, must be both incurred *and* reasonable [citations] applies equally to those with and without medical insurance." (*Howell, supra,* 52 Cal.4th at p. 559, fn. 6.)

15

of providing services, that prices for providing a particular service can "vary tremendously . . . from hospital to hospital in California," and that there can be significant disparities between the amounts charged to insured and uninsured patients. (*Id.* at pp. 560-562.) Even uninsured patients often pay less than the published rates as a result of means-tested discounts. (*Id.* at p. 561.)

"With so much variation, making any broad generalization about the relationship between the value or cost of medical services and the amounts providers bill for them—other than that the relationship is not always a close one—would be perilous. [¶] . . . *it is not possible to say generally that providers' full bills represent the real value of their services, nor that the discounted payments they accept from private insurers are mere arbitrary reductions.*" (*Howell, supra,* 52 Cal.4th at p. 562, italics added.) *Howell* stated that "a medical care provider's billed price for particular services is not necessarily representative of either the cost of providing those services or their market value." (*Id.* at p. 564.)

*Howell* emphasized that the negotiated rate may be the best indication of the reasonable value of the services provided and that it is unclear how any other "market value" could be determined. *Howell* stated, "pricing of medical services is highly complex and depends, to a significant extent, on the identity of the payer. In effect, there appears to be not one market for medical services but several, with the price of services depending on the category of payer and sometimes on the particular government or business entity paying for the services. Given this state of medical economics, *how a market value other than that produced by negotiation between the*

16

*insurer and the provider could be identified is unclear*." (*Howell*, *supra*, 52 Cal.4th at p. 562, italics added.)

*Howell* also held that the negotiated rate differential is not a collateral source payment and therefore is not subject to the collateral source rule. (*Howell*, *supra*, 52 Cal.4th at pp. 563-566.) The collateral source rule does not apply to losses or liabilities that the plaintiff never incurred and therefore is not entitled to recover. (*Id.* at pp. 563-564.) For this and other reasons, the collateral source rule is inapplicable to the negotiated rate differential and does not make that amount recoverable as tort damages. (*Id.* at pp. 564-565.)

Further, the evidentiary aspect of the collateral source rule makes any evidence of a collateral source payment inadmissible for the purpose of determining the amount of damages. (*Howell*, *supra*, 52 Cal.4th at p. 552.) This precludes evidence that an insurer, or another source independent of the tortfeasor, paid for the plaintiff's medical care, but does not preclude evidence of the amount that a medical provider, pursuant to prior agreement, accepted as full payment. (*Id.* at pp. 563, 567.) Evidence of the amount that a medical provider accepted as full payment, pursuant to prior agreement, is relevant to the amount of damages for past medical expenses and is admissible for that purpose, "assuming it satisfies other rules of evidence." (*Id.* at p. 567.)

Evidence of the full amount billed, in contrast, is not relevant to the amount of damages for past medical expenses if the plaintiff never incurred liability for that

17

amount.[8]  "Where the provider has, by prior agreement, accepted less than a billed amount as full payment, evidence of the full billed amount is not itself relevant on the issue of past medical expenses."[9]  (*Howell*, *supra*, 52 Cal.4th at p. 567.)  But *Howell* expressly declined to decide whether evidence of the full amount billed is relevant or admissible "on other issues, such as noneconomic damages or future medical expenses."  (*Ibid.*)  Because the defendant in *Howell* had conceded that it was proper for the jury to hear evidence of the plaintiff's full medical bills, those issues were not presented in that case.  (*Ibid.*)

---

[8]      An unpaid bill is not independently admissible to prove that an expense was incurred, but is admissible only for the purpose of corroborating testimony.  *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 42-43, stated, "Since invoices, bills, and receipts for repairs are hearsay, they are inadmissible independently to prove that liability for the repairs was incurred, that payment was made, or that the charges were reasonable.  [Citations.]  If, however, a party testifies that he incurred or discharged a liability for repairs, any of these documents may be admitted for the limited purpose of corroborating his testimony [citations], and if the charges were paid, the testimony and documents are evidence that the charges were reasonable.  [Citations.]"  (*Id.*, at pp. 42-43.)  Damages for past medical expenses are limited to the amount that the medical providers accepted or agreed to accept as full payment.  (*Howell, supra*, 52 Cal.4th at page 555.)  This compels the conclusion that an unpaid bill for past medical services is admissible to corroborate testimony as to the amount incurred only if the bill reflects the amount that the medical provider agreed to accept as full payment.

[9]      *Howell* made the quoted statement in explaining the implications of its holding limiting the amount of a plaintiff's recovery when the plaintiff's medical expenses are paid through private insurance.  (*Howell*, *supra*, 52 Cal.4th at pp. 566-567.)  *Howell* acknowledged that the defendant in that case had conceded that it was proper for the jury to hear evidence of the plaintiff's full medical bills, but the *Howell* court nonetheless expressed its opinion that evidence of the full amount billed was not relevant on the issue of past medical expenses in those circumstances.  (*Id.* at p. 567.)  Although this statement in *Howell* was not part of its holding, the point clearly was carefully considered and expressed quite deliberately.

b. *Evidence of the Full Amount Billed Is Not Relevant to the Amount of Past Medical Expenses*

Although *Howell*, *supra*, 52 Cal.4th 541, did not directly so hold, we are persuaded by the carefully considered reasoning in *Howell*, and therefore do hold that evidence of the full amount billed for a plaintiff's medical care is not relevant to the determination of a plaintiff's damages for past medical expenses, and therefore is inadmissible for that purpose if the plaintiff's medical providers, by prior agreement, had contracted to accept a lesser amount as full payment for the services provided.[10] In contrast, evidence of the amount accepted by medical providers as full payment does not violate the collateral source rule and is admissible provided that the source of the payment is not disclosed to the jury and the evidence satisfies the other rules of evidence. (*Id.* at p. 567.)

Consumer Attorneys argues that any evidence of the amount accepted by a medical provider as full payment for the services provided, including testimony given in court, constitutes evidence of a statement as to the terms of the agreement between the medical provider and the plaintiff's health insurer and therefore is inadmissible under the hearsay and parol evidence rules. We disagree. The hearsay rule provides

---

[10]  Consumer Attorneys of California, as amicus curiae on behalf of plaintiffs (Consumer Attorneys), cites *Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288, 1295-1296, for the proposition that evidence of the full amount billed is admissible to determine the reasonable value of past medical services. *Katiuzhinsky* is distinguishable because the plaintiffs in that case, who apparently had no health insurance, remained fully liable to their medical providers for the full amount billed despite the providers' sale of their accounts to a medical finance company at a discount. (*Id.* at pp. 1291, 1296; see *id.* at p. 1292.) *Howell* distinguished *Katiuzhinsky* on this basis. (*Howell, supra,* 52 Cal.4th at pp. 554, 557.)

19

that evidence of an out-of-court statement offered to prove the truth of the matter stated is inadmissible unless an exception applies. (Evid. Code, § 1200, subds. (a), (b).) Although the amount accepted as full payment might have been determined by an agreement, evidence that a medical provider accepted a certain amount as full payment does not constitute evidence of a statement as to the terms of the agreement and is not offered to prove the terms of the agreement. Moreover, it is not the terms of that agreement that are in issue. Rather, it is the amount that has been accepted as full payment by the medical provider. In the typical case, that will not even be in dispute and, in any event, it is a fact easily proven by non-hearsay testimonial and documentary evidence from the provider. The hearsay argument asserted by Consumer Attorneys has no merit whatever.[11]

Consumer Attorneys also argues that a plaintiff seeking damages for past medical expenses should be able to present evidence of not only the amount accepted as full payment for past medical services provided, but also the reasonable value of those services. We reject that argument as well. Because an injured plaintiff can recover as damages for past medical expenses no more than the amount incurred for those past medical services (*Howell*, *supra*, 52 Cal.4th at p. 555), evidence that the reasonable value of such services exceeded the amount paid is irrelevant and inadmissible on the issue of the amount of damages for past medical services. (See *id.* at p. 559.) Moreover, for the jury to consider both evidence of the amount accepted by medical

---

[11]    For essentially the same reasons, there is no basis for a parol evidence objection to evidence that a provider has accepted a particular amount in full payment for medical services rendered.

20

providers as full payment and evidence of a potentially greater reasonable value would very likely cause jury confusion and suggest the existence of a collateral source payment, contrary to the evidentiary aspect of the collateral source rule. Likewise, the presentation in each case of evidence as to the reasonable value of a plaintiff's medical care apart from the amount accepted by medical providers as full payment would, as *Howell* stated, "routinely involve violations of the evidentiary aspect of the collateral source rule. If the jury were required to decide whether the price actually paid for medical care was lower than reasonable, the defense could not in fairness be precluded from showing the circumstances by which that price was determined, including that it was negotiated and paid by the plaintiff's health insurer. In contrast, our conclusion, that the plaintiff may recover no more than the medical providers accepted in full payment for their services, allows for proof of the amount paid without admitting evidence of the payment's source."[12] (*Howell, supra,* 52 Cal.4th at p. 563.)

We therefore conclude that evidence of the full amount billed for plaintiffs' medical care was not admissible for the purpose of determining plaintiffs' damages for their past medical expenses. Unresolved issues remain, however, as to whether evidence of the full amounts billed for plaintiffs' medical care in this case was

---

[12] *Howell* provided this explanation in rejecting the argument by the dissent in that case that an insured plaintiff should recover the "reasonable value" of care, to be proven in each case by expert testimony, rather than a lesser amount accepted by medical providers as full payment. (*Howell*, *supra*, 52 Cal.4th at p. 563.) Our conclusion that evidence of the reasonable value of past medical services is inadmissible to prove the amount of damages for past medical services in these circumstances would not necessarily prevent a defendant from offering evidence that the reasonable value of past medical services was *less* than the amount paid.

21

admissible for the purpose of determining future medical expenses and noneconomic damages, or may be admissible on remand for those purposes.[13] (*Howell, supra,* 52 Cal.4th at p. 567.) We now turn to those issues.

      c.     *Evidence of the Full Amount Billed For Past Medical Services Is Not Relevant to the Determination of Damages for Future Medical Expenses*

An injured plaintiff is entitled to recover the reasonable value of medical services that are reasonably certain to be necessary in the future. (Civ. Code, §§ 3283 [damages may be awarded for "detriment . . . certain to result in the future"], 3359 ["[d]amages must, in all cases, be reasonable . . . "]; *Caminetti v. Pacific Mut. Life Ins. Co.* (1943) 23 Cal.2d 94, 103 [future damages must be proven with "reasonable certainty"].) The argument that the full amount billed for past medical services is relevant to the reasonable value of future medical services that the plaintiff is reasonably certain to require necessarily assumes that the full amount billed for past medical services is relevant to the value of those past medical services. In our view, *Howell*, *supra*, 52 Cal.4th 541, negates such an assumption and precludes this argument.

As already noted, *Howell* stated that the full amount billed is not an accurate measure of the value of medical services, that there can be significant disparities between the amounts charged by medical providers and the costs of providing services

---

[13]     Evidence that is not relevant on a particular issue is nevertheless admissible if it is relevant on another issue in dispute, subject to a limiting instruction upon request. (Evid. Code, § 355; *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 682.) We requested supplemental briefs from the parties and solicited amicus curiae briefs addressing the admissibility of evidence of the full amount billed for an injured plaintiff's medical care for the purpose of determining damages for future medical expenses and noneconomic damages.

22

and that the price of a particular service can "vary tremendously . . . from hospital to hospital in California" and "a medical provider's billed price for particular services is not necessarily representative of either the cost of providing those services or their market value." (*Howell*, *supra*, 52 Cal.4th at pp. 560-562, 564.) These and other observations in *Howell* compel the conclusion that the full amount billed by medical providers is not relevant to the value of past medical services. For the same reason, the full amount billed for past medical services is not relevant to a determination of the reasonable value of future medical services. Moreover, for a jury to consider both evidence of the amount accepted as full payment, for the purpose of determining the amount of past economic damages, and the full amount billed, for some other purpose, would most certainly cause jury confusion and suggest the existence of a collateral source payment, contrary to the evidentiary aspect of the collateral source rule. We therefore conclude that the full amount billed for past medical services is not relevant to the amount of future medical expenses and is inadmissible for that purpose.

      d.    *Evidence of the Full Amount Billed For Past Medical Services Cannot Support an Expert Opinion on the Reasonable Value of Future Medical Services*

Our conclusion that the full amount billed by medical providers for past medical services is not relevant to the value of the services provided also has implications for expert opinion testimony that may be offered on remand as to the reasonable value of medical services to be provided in the future. Because the full amount billed for past medical services provided to plaintiffs is not relevant to the value of those services, we believe that the full amount billed for those past medical services can provide no

23

reasonable basis for an expert opinion on the value of future medical services. Evidence of the full amount billed for past medical services provided to plaintiffs therefore cannot support an expert opinion on the reasonable value of future medical services. (Evid. Code, §§ 801, subd. (b), 802.)

Evidence Code section 801, subdivision (b) states that an expert opinion must be "[b]ased on matter . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . . " " 'We construe this to mean that the matter relied on must provide a reasonable basis for the particular opinion offered, and that an expert opinion based on speculation or conjecture is inadmissible.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770 (*Sargon*), quoting *Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564.) Expert opinion testimony based on matter that provides no reasonable basis for the opinion offered is properly excluded under Evidence Code section 801, subdivision (b). (*Sargon*, *supra*, at p. 776.)

Similarly, Evidence Code section 802 allows the trial court to inquire into the reasons for an expert's opinion and to exclude expert opinion testimony if it is "based on reasons unsupported by the material on which the expert relies." (*Sargon*, *supra*, 55 Cal.4th at p. 771.) Evidence Code section 802 also allows the courts to develop " 'case law restrictions on an expert's "reasons." ' [Citation.]" (*Sargon*, *supra*, at p. 771.) If the material on which an expert relies does not support the expert's reasoning, the expert's opinion is properly excluded under Evidence Code section 802. (*Sargon*, *supra*, 55 Cal.4th at p. 771.)

Moreover, for an expert to base an opinion as to the reasonable value of future medical services, in whole or in part, on the full amount billed for past medical services provided to a plaintiff would lead to the introduction of evidence concerning the circumstances by which a lower price was negotiated with that plaintiff's health insurer, thus violating the evidentiary aspect of the collateral source rule. (*Howell*, *supra*, 52 Cal.4th at p. 563.) Thus, we conclude that any expert who testifies on remand with respect to the reasonable value of the future medical services that Corenbaum and Carter are reasonably likely to require may not rely on the full amounts billed for plaintiffs' past medical expenses.[14]

e.      *Evidence of the Full Amount Billed Is Not Relevant to the Amount of Noneconomic Damages*

Noneconomic damages compensate an injured plaintiff for nonpecuniary injuries, including pain and suffering. Pain and suffering is a unitary concept that encompasses physical pain and various forms of mental anguish and emotional distress. (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 892-893.) Such injuries are subjective, and the determination of the amount of damages by the trier of fact is equally subjective. (*Id.* at p. 893.)[15] There is no fixed standard to determine the

---

[14]      Given this limitation on the presentation of an expert's opinion in this case, any issues that may arise on remand regarding such presentation should be resolved by the trial court in a hearing held outside the presence of the jury.

[15]      Subjective mental states "represent[] a detriment which can be translated into monetary loss only with great difficulty. [Citations.] But the detriment, nevertheless, is a genuine one that requires compensation [citations], and the issue generally must be resolved by the 'impartial conscience and judgment of jurors who may be expected to

amount of noneconomic damages. Instead, the determination is committed to the discretion of the trier of fact. (*Ibid.*; see Rest.2d Torts, § 912, com. b, pp. 479-480.)

This is no easy task. In *Beagle v. Vasold* (1966) 65 Cal.2d 166, the Supreme Court, in allowing a per diem pain and suffering argument, commented, "One of the most difficult tasks imposed upon a jury in deciding a case involving personal injuries is to determine the amount of money the plaintiff is to be awarded as compensation for pain and suffering. No method is available to the jury by which it can objectively evaluate such damages, and no witness may express his subjective opinion on the matter. [Citation.] In a very real sense, the jury is asked to evaluate in terms of money a detriment for which monetary compensation cannot be ascertained with any demonstrable accuracy. . . . 'Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement, and consequently the judge can, in his instructions, give the jury no standard to go by; he can only tell them to allow such amount as in their discretion they may consider reasonable. . . . The chief reliance for reaching reasonable results in attempting to value suffering in terms of money must be the restraint and common sense of the jury. . . . ' [Citation.]" (*Id.* at p. 167.)

Lawyers have used the amount of economic damages as a point of reference in their argument to a jury, or in settlement discussions, as a means to help determine the amount of noneconomic damages. We need not comment on this practice except to

---

act reasonably, intelligently and in harmony with the evidence.' [Citations.]"
(*Capelouto v. Kaiser Foundation Hospitals*, *supra*, 7 Cal.3d at p. 893.)

state that it can provide no justification for the admission of evidence that is otherwise inadmissible and that is not relevant to the amount of economic damages. As we have explained, the full amount billed for past medical services is not relevant to a determination of the damages for either past or future medical services if the medical providers had agreed to accept a lesser amount as full payment. We conclude that evidence of the full amount billed is not admissible for the purpose of providing plaintiff's counsel an argumentative construct to assist a jury in its difficult task of determining the amount of noneconomic damages and is inadmissible for the purpose of proving noneconomic damages.

        f.      *The Judgment Must Be Reversed for a New Trial on Compensatory Damages*

As explained above, we conclude that evidence of the full amounts billed for Corenbaum's and Carter's medical care was not relevant to the amount of their damages for past medical expenses, future medical expenses or noneconomic damages, and it was not offered in evidence for any other purpose. The admission of evidence of the full amounts billed therefore was error. (Evid. Code, § 350.) The error was prejudicial because, as the record before us clearly demonstrates, the amounts awarded as damages were based on the full amounts billed rather than the lesser amounts accepted by medical providers as full payment. We therefore will reverse the judgments in favor of Corenbaum and Carter as to the awards of compensatory damages against Lampkin and

remand the matter with directions to conduct a new trial to determine the amounts of compensatory damages, liability having been established.[16]

2. *Lampkin May Raise the Issue on Appeal*

Lampkin's failure to object to the admission of evidence of the full amounts billed does not preclude him from raising the issue on appeal. An appellant may challenge the admission of evidence for the first time on appeal despite his or her failure to object in the trial court if the challenge is based on a change in the law that the appellant could not reasonably have been expected to foresee. (*People v. Black* (2007) 41 Cal.4th 799, 810-811; *People v. Turner* (1990) 50 Cal.3d 668, 703.) Opinions by the Courts of Appeal prior to *Howell*, *supra*, 52 Cal.4th 541, held that the rule from *Hanif*, *supra*, 200 Cal.App.3d 635, and *Nishihama*, *supra*, 93 Cal.App.4th 298, limiting the amount of a plaintiff's recovery did not preclude the admission of evidence of the full amount billed for past medical care, and stated that such evidence provided the jury a more accurate indication and a more complete picture of the extent of the plaintiff's injuries. (*Olsen v. Reid* (2008) 164 Cal.App.4th 200, 204; *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150, 1157.) Lampkin could not reasonably have been expected to anticipate the rule announced for the first time in *Howell*, *supra*, 52 Cal.4th at page 567, that evidence of the full amount billed is not relevant on the issue of past medical expenses in these circumstances.

---

[16] "An appellate court may order a limited new trial if a new trial on limited issues would not cause such uncertainty or confusion as to deny a fair trial, as here. (*Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 801 [197 P.2d 713]; see *Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 776 [63 Cal.Rptr.2d 859, 937 P.2d 290].)" (*Mealy v. B-Mobile, Inc.* (2011) 195 Cal.App.4th 1218, 1225, fn. 1.)

28

On the other hand, we reject plaintiffs' argument that the rule that evidence of the full amounts billed is inadmissible in these circumstances (see *Howell*, *supra*, 52 Cal.4th at p. 567) should not apply retroactively to the judgments entered in plaintiffs' favor.[17] As a general rule, judicial decisions in tort cases are given full retroactive effect in all pending cases, including cases pending on appeal. (*Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978-979, 981-982; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24.) But considerations of fairness and public policy may justify an exception when a judicial decision changes a settled rule of law on which the parties have relied. (*Claxton v. Waters* (2004) 34 Cal.4th 367, 377.) " ' "Particular considerations relevant to the retroactivity determination include the reasonableness of the parties' reliance on the former rule, the nature of the change as substantive or procedural, retroactivity's effect on the administration of justice, and the purposes to be served by the new rule. [Citations.]" ' [Citations.]" (*Id.* at pp. 378-379.)

The parties here relied on the former rule allowing the admission of evidence of the full amounts billed, but did so subject to Lampkin's right to seek a reduction of damages in a posttrial hearing. Our application of the rule that evidence of the full amounts billed is inadmissible in these circumstances will not upset any expectation or reliance regarding the amount recoverable and will result in no unfairness. Moreover, the new rule concerns only the relevance and admissibility of evidence of the full amount billed and does not change the legal consequences of past conduct by imposing

---

[17] As previously noted, those judgments were entered by the trial court on July 5, 2011. The Supreme Court's opinion in *Howell* was filed on August 18, 2011.

new or different liabilities for such conduct. (Cf. *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230-232.) We conclude that the exception to the general rule of full retroactivity is inapplicable.

3.     *Lampkin Has Shown No Error in the Admission of Evidence of his Prior Arrest for Driving Under the Influence*

Lampkin contends the evidence of his arrest for driving under the influence on December 23, 2007, was not relevant to any issue in this case and was unduly prejudicial. He argues that the evidence was not relevant to his awareness of the dangers of drunk driving at the time of the April 5, 2008, incident because at that time he had neither attended drug or alcohol counseling as a result of the prior incident nor suffered a conviction as a result of that incident. He argues that the only purpose of the evidence was to show a tendency to act consistent with his conduct on a specific prior occasion. He argues that such evidence is inadmissible character evidence under Evidence Code section 1101, subdivision (a) and also should have been excluded under Evidence Code section 352. He seeks a new trial limited to the issue of damages.[18]

Lampkin's argument on appeal differs somewhat from his argument in the trial court. He argued on his motion in limine in the trial court, based on Evidence Code section 787, that evidence of a specific instance of conduct is inadmissible to attack the credibility of a witness, and that evidence of his prior arrest therefore could not be admitted to attack the credibility of his testimony. He also argued that the evidence

---

[18]     As already noted, Lampkin does not seek a new trial on the issue of liability. Having admitted negligence before the denial of his motion in limine to exclude this evidence, he does not argue that the denial of his motion in limine or the admission of evidence of his prior arrest was prejudicial on the issue of liability.

30

should be excluded under Evidence Code section 352, which he also argues on appeal. But he did not argue in the trial court that the evidence was inadmissible character evidence under Evidence Code section 1101, subdivision (a).[19] We therefore conclude that Lampkin forfeited any objection based on Evidence Code section 1101, subdivision (a) by failing to timely assert that specific ground in the trial court. (Evid. Code, § 353, subd. (a); *People v. Demetrulias* (2006) 39 Cal.4th 1, 19-20.)

Lampkin also has not shown that he is entitled to a reversal based on Evidence Code section 352 because he has not shown that the probative value of the admitted evidence was substantially outweighed by its potential for prejudice. The evidence of his prior arrest for driving under the influence on December 23, 2007, tended to show Lampkin's awareness of the dangers of drunk driving at the time of the incident on April 5, 2008, and therefore was probative on the issue of malice for purposes of punitive damages. The potential for prejudice was remote because at the time of the denial of his motion in limine, Lampkin had already admitted his liability. Lampkin fails to explain how the admission of evidence of his prior arrest is likely to have affected the amount of compensatory damages awarded, and we can discern no reasonable connection. We therefore hold that Lampkin has shown no abuse of discretion in the admission of this evidence.

---

[19]  Moreover, despite the trial court's suggestion upon denying Lampkin's motion in limine that he should request a limiting instruction, there is no indication in the record that he did so.

4.       *The Trial Court Properly Instructed the Jury on Punitive Damages*

Lampkin contends Carter failed to allege a claim for punitive damages in his complaint, so the trial court erred by instructing the jury on punitive damages as to Carter.  But the reporter's transcript shows that the court granted the Carters' oral motion before opening statements to amend their complaint by adding a count for willful misconduct and a prayer for punitive damages.  We therefore conclude that the court did not err in instructing the jury on punitive damages as to Carter.

5.       *Lampkin Is Estopped From Asserting That the Punitive Damage Awards Are Excessive*

Lampkin contends there is insufficient evidence of his financial condition to justify an award of punitive damages in any amount, and his own testimony as to his financial condition shows that the $40,000 awarded in punitive damages is excessive.  Whatever the merits of this argument, Lampkin is estopped from asserting it.

California law permits the recovery of punitive damages "for the sake of example and by way of punishing the defendant."  (Civ. Code, § 3294, subd. (a).)  In determining whether a punitive damage award is excessive under California law, a court must consider (1) the reprehensibility of the defendant's conduct; (2) the amount of compensatory damages or actual harm suffered by the plaintiff; and (3) the defendant's financial condition.  (*Adams v. Murakami* (1991) 54 Cal.3d 105, 110; *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928.)

"Even if an award is entirely reasonable in light of the other two factors . . . , the award can be so disproportionate to the defendant's ability to pay that the award is

32

excessive *for that reason alone*." (*Adams v. Murakami*, *supra*, 54 Cal.3d at p. 111.) Absent meaningful evidence of a defendant's financial condition, a reviewing court cannot determine whether a punitive damages award is excessive under California law. (*Id.* at pp. 113-114.) Accordingly, evidence of the defendant's financial condition at the time of trial is a prerequisite to an award of punitive damages. (*Id.* at pp. 108-109, 116; *Kelly v. Haag* (2006) 145 Cal.App.4th 910, 915.)

A trial court ruling on a new trial motion may grant a new trial on the ground of excessive damages only if "after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (Code Civ. Proc., § 657.) On appeal from a judgment after the denial of a new trial motion, we can reverse the judgment based on excessive punitive damages only if, viewing the entire record in the light most favorable to the judgment and considering the three factors discussed above, we conclude as a matter of law that the award is excessive or is the result of passion or prejudice. (*Neal v. Farmers Ins. Exchange*, *supra*, 21 Cal.3d at pp. 927-928.)

A defendant who fails to comply with a court order to produce records of his or her financial condition may be estopped from challenging a punitive damage award based on lack of evidence of financial condition to support the award. (*Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 608-609 (*Mike Davidov*).) The trial court in *Mike Davidov* ordered the defendant to produce all records of his financial condition for the purpose of determining the amount of punitive damages. The defendant failed to comply with the order, and the court awarded $96,000 in punitive damages. (*Id.* at

33

pp. 603-604.) We noted that the defendant's records were the only source of information available to the plaintiff regarding the defendant's financial condition and that the defendant's disobedience of the court order prevented the plaintiff from obtaining that information. (*Id.* at p. 609.) We held that having failed to comply with the order to produce records and having failed to challenge that order on appeal, the defendant was estopped from challenging the punitive damage award based on the lack of evidence of his financial condition. (*Id.* at pp. 600, 608-609.)

Similarly here, Lampkin failed to comply with a subpoena requiring him to produce at trial records of his financial condition, and he does not challenge that subpoena on appeal. A subpoena "is a writ or order directed to a person and requiring the person's attendance at a particular time and place to testify as a witness" (Code Civ. Proc., § 1985, subd. (a)), and may also require the production of documents in that person's control (*ibid.*). Thus, for purposes of requiring attendance and the production of documents at trial, a subpoena is equivalent to a court order. In light of Lampkin's failure to comply with the subpoena for records, we conclude that he is estopped from challenging the punitive damage awards based on lack of evidence of his financial condition or insufficiency of the evidence to establish his ability to pay the amount awarded.

6. *Section 1021.4 Does Not Authorize a Fee Award in These Circumstances*

Plaintiffs contend the trial court erroneously concluded that it had no authority to award them attorney fees under section 1021.4. We independently review the denial of the plaintiffs' motions for attorney fees to the extent that the ruling was based on the

court's construction of a statute and application of the statute to undisputed facts. (*California Forestry Assn. v. California Fish & Game Commission* (2007) 156 Cal.App.4th 1535, 1544.)

"Our fundamental task in construing a statute is to ascertain the legislative intent so as to effectuate the purpose of the law.  (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].)  Because the statutory language ordinarily is the most reliable indicator of legislative intent, we begin by examining the words of the statute.  (*Ibid.*)  We give the words of the statute their ordinary and usual meaning and construe them in the context of the statute as a whole and the entire scheme of law of which it is a part.  (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].)  If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not intend, we presume that the Legislature meant what it said and the plain meaning governs.  (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].)  If the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy.  (*Ibid.*)"  (*Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1448-1449.)

Section 1021.4 authorizes an attorney fee award in favor of the prevailing plaintiff "[i]n an action for damages against a defendant based upon that defendant's commission of a felony offense for which that defendant has been convicted."  In our view, an action for damages is "based upon" the defendant's commission of a felony

35

within the meaning of the statute if and only if the damages claimed by the plaintiff were caused by the same felonious criminal conduct for which the defendant was convicted. (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 689, fn. 7 ["Section 1021.4 authorizes the court to award reasonable attorney fees to a prevailing plaintiff against the defendant convicted of the felony that has caused the plaintiff's loss."]; see *Sommers v. Erb* (1992) 2 Cal.App.4th 1644, 1650 ["What section 1021.4 and the restitution provisions of Proposition 8 seek to address are felonies that cause injuries to other persons"]; *Wood v. McGovern* (1985) 167 Cal.App.3d 772, 778 ["Section 1021.4 simply provides for the award of attorney's fees to a plaintiff who prevails in an action to recover losses occasioned by the commission of a felony by a convicted defendant"].)

Vehicle Code section 20001 states, in relevant part:

"(a) The driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004.

"(b)(1) Except as provided in paragraph (2), a person who violates subdivision (a) shall be punished by imprisonment in the state prison, or in a county jail

for not more than one year, or by a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or by both that imprisonment and fine."[20]

Vehicle Code section 20003 requires the driver of any vehicle involved in an injury accident to provide to the driver and the occupants of any vehicle collided with and to any traffic or police officer at the scene certain identifying information, and requires the driver to render reasonable assistance to any person injured in the accident. Vehicle Code section 20004 requires the driver of any vehicle involved in a fatal accident to report the accident to the California Highway Patrol or other police authority if there is no traffic or police officer at the scene.

Vehicle Code section 20001, subdivision (b) makes it a felony for the driver of a vehicle involved in an injury accident to fail to immediately stop the vehicle and provide the information and assistance required by Vehicle Code sections 20003 and 20004. The failure to comply with those statutory obligations constitutes a felony regardless of whether the driver was at fault or responsible for the accident. (*People v. Mace* (2011) 198 Cal.App.4th 875, 887-888; *People v. Bammes* (1968) 265 Cal.App.2d 626, 631-633; see *People v. Harbert* (2009) 170 Cal.App.4th 42, 55, fn. 10 [dictum]; *People v. Sell* (1950) 96 Cal.App.2d 521, 523 [construing identical operable language in former Veh. Code, § 480]; cf. *Brooks v. E. J. Willig Truck Transp. Co.* (1953) 40 Cal.2d 669, 679 [construing identical operable language in former Veh. Code., § 480 for purposes of civil liability].) The purpose of Vehicle Code section 20001 is to prevent

---

[20] Similarly, Vehicle Code section 20002 imposes certain duties on the driver of a vehicle in an accident resulting in only property damage and states that a person who fails to comply with those requirements is guilty of a misdemeanor.

drivers involved in injury accidents from leaving injured persons in distress and in need of medical care and from attempting to avoid potential criminal and civil liability for the accident. (*People v. Corners* (1985) 176 Cal.App.3d 139, 148.)

Many courts have concluded that the conduct made criminal by Vehicle Code section 20001, subdivision (b) is fleeing the scene of an injury accident without providing the required information or rendering assistance, rather than causing or being involved in the accident itself. (E.g., *People v. Powell* (2010) 181 Cal.App.4th 304, 316; *People v. Harbert*, *supra*, 170 Cal.App.4th at p. 59; *People v. Wood* (2000) 83 Cal.App.4th 862, 866; *People v. Braz* (1998) 65 Cal.App.4th 425, 432-433; *People v. Corners*, *supra*, 176 Cal.App.3d at p. 148.) We agree. The occurrence of an injury accident is a condition precedent to the imposition of duties upon the driver under Vehicle Code sections 20001, subdivision (a) and 20003, but is not an element of the crime under Vehicle Code section 20001, subdivision (b). (*People v. Valdez* (2010) 189 Cal.App.4th 82, 85.) Accordingly, the damages recoverable in a civil action for violation of the statute are limited to those caused by fleeing rather than damages caused by the accident itself. (*People v. Corners*, *supra*, 176 Cal.App.3d at p. 148.)

We therefore conclude that when a defendant has been convicted of a violation of Vehicle Code section 20001, subdivision (a), the conduct constituting the commission of a felony for purposes of section 1021.4 is fleeing the scene of an injury accident without providing the required information or rendering assistance. An action for damages for injuries suffered in the accident, such as the present action, is not

"based upon" that conduct within the meaning of section 1021.4. The trial court properly denied the motions for attorney fees on this basis.[21]

*People v. Carbajal* (1995) 10 Cal.4th 1114, cited by plaintiffs, is not on point. The trial court in *Carbajal* ordered restitution, as a condition of probation, for property damage caused by a driver who was convicted of fleeing the scene of an injury accident (Veh. Code, § 20001, subd. (a)). The California Supreme Court held that article I, section 28, of the California Constitution, also known as Proposition 8, and Penal Code section 1203.04 do not limit the trial court's discretion to order restitution as a condition of probation where the victim's loss was not caused by the criminal conduct underlying the conviction if the court finds that one of the statutory purposes of restitution would be served. (*Carbajal*, *supra*, at p. 1122.) *Carbajal* did not hold or suggest that a civil action to recover damages for losses related to, but not caused by, the criminal conduct underlying a conviction for a violation of Vehicle Code section 20001, subdivision (a) is an action for damages based on such a conviction within the meaning of section 1021.4.[22] We also reject plaintiffs' public policy argument for construing

---

[21]     We reject plaintiffs' argument that Lampkin's fleeing the scene and denying responsibility caused them damages by frustrating their efforts to hold him liable and increasing their litigation costs. Plaintiffs' litigation costs are not "damages" sought in this action within the meaning of section 1021.4.

[22]     *People v. Rubics* (2006) 136 Cal.App.4th 452, also cited by plaintiffs, involved restitution in connection with sentencing for a violation of Vehicle Code section 20001, subdivision (a). *Rubics* held that the trial court had the discretion under Penal Code section 1202.4, subdivision (f) to order restitution for damages caused by the accident. (*Rubics*, *supra*, at p. 461.) *Rubics* did not hold that attorney fees are recoverable under section 1021.4 in a civil action seeking such damages. To the extent that *Rubics* suggested that a conviction under Vehicle Code section 20001, subdivision (a) is based

39

section 1021.4 to authorize an attorney fee award in these circumstances.  Such

a construction would be contrary to the clear statutory language.

---

in part on the defendant's causing or being involved in an injury accident, we decline to
follow it for the reasons we have stated.

## DISPOSITION

The judgments in favor of Corenbaum and Carter are reversed as to the awards of compensatory damages against Lampkin, and the matter is remanded with directions to conduct a new trial limited to determining the amounts of compensatory damages in favor of Corenbaum and Carter in accordance with the views expressed herein. The judgments are otherwise affirmed. The order denying the motions for attorney fees is affirmed. Lampkin is entitled to recover his costs on appeal.


*CERTIFIED FOR PUBLICATION*



CROSKEY, Acting P. J.

WE CONCUR:



KITCHING, J.



ALDRICH, J.


41